**John Stephan PARISIE,
Petitioner-Appellant,**

v.

**J.W. GREER, Warden, Menard Correctional Center, Respondent-Appellee.**

**No. 80–1940.**

United States Court of Appeals,
Seventh Circuit.

Argued June 10, 1981.

Reargued Oct. 19, 1982.

Decided March 28, 1983.

Opinion on Denial of Reconsideration
Sept. 12, 1983.

Bauer, Eschbach and Posner, Circuit Judges, concurred in result and filed opinions.

Cudahy, Circuit Judge, concurred in part and dissented in part and filed opinion.

Swygert, Senior Circuit Judge, concurred in part and dissented in part and filed opinion in which Cummings, Chief Judge, and Cudahy, Circuit Judge, joined in part.

Harlington Wood, Jr., Circuit Judge, dissented and filed opinion.

Cudahy, Circuit Judge, dissented from denial of petition for reconsideration and filed opinion in which Wood and Flaum, Circuit Judges, concurred.

Swygert, Senior Circuit Judge, dissented from denial of petition for reconsideration and filed opinion.

See also, 7th Cir., 685 F.2d 1016.

Jeffrey S. Bork, Sidley & Austin, Chicago, Ill., for petitioner-appellant.

Michael V. Accettura, Asst. Atty. Gen., Springfield, Ill., for respondent-appellee.

Before CUMMINGS, Chief Judge, PELL, BAUER, WOOD, CUDAHY, ESCHBACH, POSNER, and COFFEY, Circuit Judges, and SWYGERT, Senior Circuit Judge.

PER CURIAM.

This is an appeal by John Stephan Parisie from the district court's denial of his petition for habeas corpus. A panel of this court reversed the district court and ordered the writ of habeas corpus to issue. 671 F.2d 1011 (7th Cir.1982). The state petitioned for rehearing with suggestion of rehearing *en banc,* contending that this court lacked jurisdiction of Parisie's appeal. Rehearing *en banc* was ordered. Although the usual practice of this court is to vacate

the panel decision when rehearing *en banc* is ordered, this was inadvertently not done in the present case. However, six members of the court (Judges Pell, Bauer, Wood, Eschbach, Posner, and Coffey), a majority, believe, though for different reasons, that the panel decision should be vacated.

The court, having vacated the panel decision, has decided to affirm the judgment of the district court denying the petition for habeas corpus, although no single opinion commands the support of a majority of the court's members.

■ Five members of the court—Chief Judge Cummings and Judges Cudahy, Eschbach, Posner, and Swygert—believe that the court does have jurisdiction of Parisie's appeal, but they do not agree on the basis for this conclusion. Judge Swygert, joined by Chief Judge Cummings and Judge Cudahy, proposes one basis, and Judge Eschbach proposes another. Although those joining in Judge Swygert's opinion agree with Judge Eschbach's alternative basis, as does Judge Posner, Judge Eschbach and Judge Posner do not agree with the basis for jurisdiction proposed in Judge Swygert's opinion. The remaining members of the court (Judges Pell, Bauer, Wood, and Coffey), for reasons stated in Judge Wood's opinion, believe that the court does not have jurisdiction of Parisie's appeal.

■ A majority of the court (Judges Pell, Bauer, Eschbach, Posner, and Coffey) believes that if there is appellate jurisdiction, the court can decide the merits of the appeal even though the petition for rehearing was limited to the question of jurisdiction. Chief Judge Cummings and Judges Cudahy and Swygert disagree for the reasons stated in Judge Swygert's opinion, and Judge Wood (joined by Judge Cudahy) believes that, if the merits are to be reached, the proper course would be to order reargument on the merits.

With regard to the merits, four judges—Judges Pell, Bauer, Posner, and Coffey—believe that the judgment of the district court should be affirmed. Judge Eschbach believes the case should be remanded for the reasons stated in Judge Cudahy's dissenting opinion from the panel decision. Chief Judge Cummings and Judges Cudahy and Swygert, believing that the panel majority opinion should be retained, would reverse the district court. (Part III of Judge Swygert's opinion explains why he believes the panel decision is correct on the merits.) Since the court is divided equally on whether to affirm the district court, on the one hand, or reverse it and remand the case, on the other, the district court's decision is affirmed, the panel decision having been vacated herewith. A similar conclusion is reached by observing that four members of the court believe there is no appellate jurisdiction and that a fifth, Judge Posner, believes there is jurisdiction but that the district court's decision should be affirmed on the merits. Thus, five members of the court believe, though for different reasons, that the judgment of the district court should not be disturbed.

For the reasons stated, the panel decision is VACATED and the judgment of the district court is AFFIRMED.

BAUER, Circuit Judge.

I quote from the opinion of the Illinois Appellate Court in a recitation of certain facts in this case, not contested in the proceedings before this court.

A deputy sheriff testified that the defendant was found asleep in the decedent's car at 5:22 A.M. the same morning [that the decedent was found] and that there was blood on the left front seat, left door and left rear fender of the car. When he was apprehended, the defendant had the decedent's driver's license and credit cards in his own wallet, and he had the victim's cigarette lighter and wallet (containing checks and papers of the decedent) in his pocket. The decedent's sport jacket was found folded on the back seat of the car and in the pocket was decedent's gold wedding ring. The defendant was placed under arrest and remained in the county jail until trial. At the jury trial, Parisie testified on his own behalf and admitted that he shot deceased. He also admitted that he had stolen the pistol used to kill the decedent

during a burglary a few days earlier and that he had fired the pistol in his hotel room before the shooting of the decedent. Parisie was found guilty by the jury and was sentenced by the court to a penitentiary term of 40 to 70 years.

The defense was that of insanity—insanity based upon "homosexual panic." The single constant thread woven throughout the fabric of this appeal is the issue of homosexuality and the theory of defendant attempting to equate "homosexual panic" with insanity. And since this theory underlies some of the specific issues raised, we will consider it at the outset.

\*    \*    \*    \*    \*    \*

On the third day of voir dire the defense presented to the court an affidavit of one of the defendant's lawyers wherein he stated that three persons who were presently incarcerated (one in a Tennessee jail, another in an Illinois penitentiary and a third at the Illinois State Farm), if called to testify, would state that each, respectively, had homosexual relations with the decedent, knew decedent's reputation in the community was that of a homosexual, and that decedent had been observed in a "known homosexual hangout" holding hands with another male person. The affidavit was signed by defense counsel and alleged that it was based upon interviews conducted by an investigator.

\*    \*    \*    \*    \*    \*

Defendant offered [the same] three witnesses to testify relative to decedent's homosexual reputation. All three witnesses were called to the stand, gave their names and their addresses, and then objection by the prosecution to their further testimony was sustained. The only offer of proof made by defense counsel as to what they would testify to came from defense counsel themselves. In the case of the first witness, defense counsel merely stated in chambers that the first witness would testify to three specific acts of homosexuality with the deceased and that the decedent's reputation in the

community was that of a homosexual. There was not even that much offer of proof on the other two witnesses, since counsel simply stated that they adopted as offer of proof the affidavit previously filed. When we turn to that affidavit we find that it is one executed by one of defense counsel, containing a mere recitation that the two witnesses had seen decedent in known homosexual locations. The "offer of proof" regarding all three of these witnesses is patently inadequate. They amount to nothing more than conclusionary, broad-sweeping statements of defense counsel and offer no acceptable foundation for admission as reputation evidence. "This court, on numerous occasions, has held that reputation witnesses must be shown to have adequate knowledge of the person queried about and that evidence of reputation, to be admissible, must be based upon contact with the subject's neighbors and associates rather than upon the personal opinion of the witness." *People v. Moretti,* 6 Ill.2d 494, 129 N.E.2d 709, 725. Obviously, the form in which this offer of proof comes to us is insufficient to accommodate the well settled state of the law in this area.

*People v. Parisie,* 5 Ill.App.3d 1009, 287 N.E.2d 310, 313, 317, 324–25 (1972).

The panel majority opinion brushed aside the fact that the offer of proof failed to meet the standards of Illinois law and rather casually reversed not only this case but the holding of the Supreme Court of Illinois in the *Moretti* decision.

It is worth noting that the state trial court and the state appellate court each addressed the relevancy question and the offer of proof and found against the defendant. As Judge Cudahy pointed out in his dissent to the original panel opinion, this issue was never addressed or developed by the district court in the case before this court. Judge Cudahy, in footnote 2 of his dissent, stated properly that:

the majority . . . [argues] that the proffered testimony "involved a great deal more than mere reputation evidence" because the witnesses allegedly would testi-

fy about "actual homosexual acts and manifestations" attributed to the victim. *Ante,* at 1014. But I think under Illinois law evidence of prior homosexual acts may not be admitted to prove reputation. *See People v. Moretti,* 6 Ill.2d 494, 129 N.E.2d 709, 725–26 (1955), *cert. denied,* 356 U.S. 947 [78 S.Ct. 794, 2 L.Ed.2d 822] (1958). The defendant apparently did not articulate at trial or on this or prior appeals any basis other than reputation upon which the state trial judge could have admitted evidence of prior acts by the victim. Rather than joining the majority in merely asserting that the proffered evidence "involved a great deal more than reputation evidence," I believe that we should remand to the district court for a determination of the purpose for which this evidence was proffered and the state law evidentiary rules governing its admission.

I think that to *require* the district court, without further hearing, to issue the writ prayed for by Parisie would be just plain wrong. Illinois courts in the application of their own law are entitled to far more consideration than this would give them.

I recognize that the judges who joined the panel decision, and a minority of the other judges of this court, have taken the position that only the jurisdictional issue was before the *en banc* panel. I do not think this is either required or proper.

Circuit rule 16(b) should not be interpreted as a positive limitation on this court's power. Rather, the rule is intended to insure that the court is properly apprised of the issues meriting reconsideration. If the petitioning party fails in this task, the court has both the power and the duty to raise and consider the issues itself. This court likely would denounce an attempt by a party to construe these rules as limiting its powers, but that is precisely what Judge Swygert suggests happened here. The failure of the litigants to suggest an appropriate route to rehearing does not limit this court's power to recognize *sua sponte* the exceptional importance of this issue.

Considering all issues involved, I would affirm the decision of the district court on the merits.

HARLINGTON WOOD, Jr., Circuit Judge.

The majority finds jurisdiction in this court, but by two opposing views, one authored by Judge Swygert and the other by Judge Eschbach. I respectfully dissent from both.

Even though Judge Swygert makes a strong argument for creating an exception to the Federal Rules of Civil Procedure in order to give us jurisdiction in this case, I must respectfully dissent. I expect that any future cases taking advantage of this vague and flexible new precedent will continually remind us of today's mistake.

On January 17, 1969, Parisie was found guilty of murder by a jury in the Circuit Court of Sangamon County, Illinois, and sentenced to a term of 40 to 70 years. In 1972, the Illinois Appellate Court affirmed the conviction.[1] Attempts at review by the Illinois Supreme Court and post-conviction proceedings were unsuccessful.

The undisputed facts giving rise to this jurisdictional dispute followed ten years later in 1979 and 1980:

*April 3, 1979:* Parisie, pro se, filed in the district court his petition for a writ of habeas corpus to which the state responded with a motion to dismiss or, alternatively, for summary judgment.

*December 18, 1979:* Judge Foreman awarded summary judgment in favor of the state denying the writ and supporting his order with an unpublished memorandum.

*December 27, 1979:* Parisie mailed to the district court a pleading entitled, "Motion for Extension of Time to File a Motion for Reconsideration of an Order." Parisie stated he was proceeding under Rule 60 of the Federal Rules of Civil Procedure. Judge Foreman did not rule on that motion.

---

**1.** *People v. Parisie,* 5 Ill.App.3d 1009, 287   N.E.2d 310 (1972).

*February 1, 1980:* Parisie filed a "Motion for Reconsideration of an Order with Supporting Memorandum of Law" in which he reiterated he was proceeding under Rule 60 of the Federal Rules of Civil Procedure.

*May 8, 1980:* Judge Foreman denied the Motion for Reconsideration as being without merit.

*June 2, 1980:* Parisie filed his notice of appeal from Judge Foreman's original order of December 18, 1979, and the subsequent order of May 8, 1980.

*July 18, 1980:* The state filed in this court a "Motion to Dismiss Appeal for want of Jurisdiction" which was denied by a two-judge panel of this court on August 14, 1982.[2]

It is our obligation to apply the Federal Rules of Civil Procedure as interpreted by the Supreme Court to that sequence of procedural events. Parisie had an easy procedure to follow with plenty of time to secure appellate review of the original December 18, 1979 order denying the writ. He needed only to file a notice of appeal within the 30 days provided by Fed.R.Civ.P. 4(a), or within an additional 30 days as provided in Rule 4(a)(5) for cause. In addition, he would have had to seek a certificate of probable cause under Title 28, section 2253. He has demonstrated that he knows how to do these things.

Instead, Parisie sought only to reargue the same issues before Judge Foreman. That is what got him into this jurisdictional problem. He first filed a motion for an extension of time to file his anticipated motion to reconsider which he stated would be a Rule 60 motion. A little over a month later he filed his motion to reconsider. It was timely for a Rule 60 motion, but as that rule plainly states, the filing of a Rule 60 motion does "not affect the finality of a judgment or suspend its operation." If Parisie's motion to reconsider had in fact been a Rule 59 motion, as the majority claims, there would be no argument about a mere change of label, but merely changing the label would not aid Parisie. Rule 59 clearly states that a Rule 59 motion "shall be served not later than 10 days after entry of the judgment." If it had been a Rule 59 motion and timely filed, it would have tolled the running of the appeal period, but it was not. Nor could Parisie's December 27, 1979, motion for an extension of time serve any purpose because Rule 6(b) of the Federal Rules of Civil Procedure clearly prohibits any extension of time for serving a Rule 59 motion.

Parisie's outlawed motion for a continuance, by Judge Swygert's reasoning, is transformed by an interesting process into a Rule 59(e) motion. That is a benevolent fiction fraught with mischief. *Haines v. Kerner,* 404 U.S. 519, 92 S.Ct. 594, 30 L.Ed.2d 652 (1972), is cited in support, but that is a bold new use of that well-exercised precedent. *Haines* holds only that the allegations of a pro se complaint are to be held to less stringent standards than formal pleadings drafted by lawyers. It does not give a court carte blanche authority to pretend for jurisdictional purposes that a pro se litigant has done something which he has not done. *Foman v. Davis,* 371 U.S. 178, 83 S.Ct. 227, 9 L.Ed.2d 222 (1962), is also relied upon by the majority. In *Foman,* a Rule 59 motion was timely filed after judgment and after its denial a timely notice of appeal was filed. The court of appeals narrowly construed the notice of appeal as an appeal only from the Rule 59 motion and not from the underlying judgment because the notice failed to so specify. The Supreme Court in reversing under those circumstances gives Judge Swygert no succor. Nor does *Brad-*

---

**2.** The panel's order denying the state's motion contains no explanation for the ruling, but it is apparent that in any event this court would have jurisdiction of the denial of Parisie's motion for reconsideration of May 8, 1980. The panel's order does not constitute the binding "law of the case" since that is a discretionary concept designed to put issues to rest once ruled upon in a case. It is not dispositive of jurisdictional issues. *Potomac Passengers Ass'n v. Chesapeake & Ohio Ry. Co.,* 520 F.2d 91, 95 n. 22 (D.C.Cir.1975). The jurisdictional issue was again raised by the state in its brief on the merits, but was not addressed in the original panel opinion.

*ley v. Coughlin,* 671 F.2d 686 (2d Cir.1982), also relied upon by Judge Swygert, do more. In that case a pro se prisoner filed a Rule 59(e) motion combined with a notice of appeal. So much of the motion as was a 59(e) motion was not timely, but so much of it as was a notice of appeal was timely. The court of appeals merely held that the timely notice of appeal was effective even if the Rule 59(e) portion of the motion was not.

Several additional cases are cited by Judge Swygert, two of the most current ones being *Alley v. Dodge Hotel,* 551 F.2d 442, 444–45 & n. 14 (D.C.Cir.1977), *cert. denied,* 431 U.S. 958, 97 S.Ct. 2684, 53 L.Ed.2d 277 (1977), and *Sea Ranch Association v. California Coastal Zone Conservation Commissions,* 537 F.2d 1058, 1061 (9th Cir. 1976). These additional cases do not fit this case. In *Alley* the parties and the district court agreed that the motion in question "was treatable as one for a new trial or for alteration of the dismissal judgment," and was timely. 551 F.2d at 444–45. The motion appears to have been one of substance, not a motion for a continuance which under the rules can have no effect. *Sea Ranch* is no more than an application of the generally accepted rule that nomenclature is not controlling. The appellants in that case asked for relief which might have been granted under Rule 59(e), but mislabeled it as a Rule 60(b) motion. If we are considering no more than a mere mislabeling case, there would be no dissent.

Those cases are used as the excuse to transform the motion for a continuance into a Rule 59(e) motion which is what is needed to make this appeal timely. That process is supposed to work this way, as I understand it. First you change the label on the otherwise useless motion for an extension of time and thereby convert it into a Rule 60 motion. Since that doesn't toll the appeal time by itself, another change has to be worked. The Rule 60 motion for reconsideration which was filed several months after the motion for a continuance is then relabeled to transform it into an amendment to the prior relabeled motion for an extension of time. By that process the motion for an extension of time is finally transformed into a timely Rule 59 motion to toll the appeal period. We are then told that Judge Foreman "appears to have treated the two motions in just the manner we suggest." I suspect that this interpretation may come as a surprise to Judge Foreman. I long ago heard that "you cannot make a silk purse out of a sow's ear," but the Cinderella magic worked on these motions has now cast considerable doubt on that venerable country aphorism.

The need for an alternative basis to support this transformation process is recognized, but nothing more is offered than that it was somehow Judge Foreman's fault anyway and the untimeliness should therefore be excused. It is suggested that Judge Foreman caused the problem by not ruling on Parisie's ineffective extension motion in time for Parisie to correct his error. An analogy is drawn to those cases which recognize an exception when the trial judge actually does something to mislead the party such as we recognized in *Needham v. White Laboratories, Inc.,* 639 F.2d 394 (7th Cir.1981), *cert. denied,* 454 U.S. 927, 102 S.Ct. 427, 70 L.Ed.2d 237 (1981). In that case, however, the defendant had filed a timely motion which tolled the appeal period. The district court denied the motion and the appeal time began to run anew. During that time, the defendant filed a second motion, a motion to reconsider. The *Needham* court noted that the second motion did not itself toll the appeal period. However, still within the appeal time, the defendant inquired and was wrongly assured by the trial judge that the motion to reconsider did in fact toll the appeal time. Relying on the court's explicit assurance, the defendant let the appeal period expire. This court, relying on *Thompson v. Immigration and Naturalization Service,* 375 U.S. 384, 84 S.Ct. 397, 11 L.Ed.2d 404 (1964) (per curiam), nevertheless permitted the appeal as a "narrow exception" to the general timeliness requirements. Judge Fairchild, in dissent argued, however, that this court's "narrow exception" was broader than the Supreme Court's "narrow exception" and

therefore he could find no ground for jurisdiction.

Judge Swygert also finds support in *Pierre v. Jordan,* 333 F.2d 951 (9th Cir. 1964), but it, too, is distinguishable. In *Pierre,* the plaintiff filed a Rule 59 motion three days past the 10-day period, but the court dealt with the motion on the merits and denied it. When the motion was denied, however, the plaintiff still had time to file a timely notice of appeal from the original judgment, but did not, arguably on the basis that since the judge had ruled on the untimely Rule 59 motion anyway, plaintiff was entitled to assume that she had additional time to appeal. The Ninth Circuit agreed, finding in those circumstances a narrow *Thompson* exception. It appears that "narrow" can be broadly construed. But, in any event, when Parisie filed his motion to reconsider, the 30-day appeal period had already expired.

Judge Swygert also mentions that the state filed four motions in this court to extend the time for filing its briefs in violation of Circuit Rule 8(a). Those state deficiencies, however objectionable, do not raise a jurisdictional question and are irrelevant.

Judge Swygert concludes by requiring that district judges dispel a pro se litigant's "natural confusion" by either ruling immediately on a motion for an extension of time or advising the party of his mistake. Assuming for a moment that that is the way to require a district judge to conduct the business of his court, let us examine the Parisie situation. Even if the clerk had brought the extension of time motion immediately to Judge Foreman's attention, it would be evident that Parisie still had plenty of time to file his Rule 60 motion, which is what he stated was his intention. Parisie needed nothing then from Judge Foreman. Parisie mentioned neither Rule 59 nor possible appeal in his extension of time motion. Judge Foreman, in my judgment, was not the least bit at fault. Judge Foreman would have had to immediately contact and confer with Parisie to make sure Parisie really meant what he said, and then advise Parisie accordingly.

I am not opposed generally to trial judges being expected to give some special attention to the problems of pro se litigants in situations where the problem is brought to the judge's attention and the error is apparent. However, if it is to be more than that, then the trial judge will have to continually monitor the clerk's office and somehow make sure that no pro se litigant is making a mistake. It would be better, I believe, for this court to plainly say what the rules provide. That should be enough to educate pro se applicants and those who assist them even if they had, for some reason, not previously understood what the rules clearly provide. That would be a more satisfactory solution than for this court to appoint the trial judge as a "guardian ad litem" for all pro se litigants and to require the judge to consult with and advise them. The tendency to heap those inappropriate additional burdens on trial judges should be resisted.

Finally, there is *Browder v. Director, Department of Corrections,* 434 U.S. 257, 263 n. 7, 98 S.Ct. 556, 560 n. 7, 54 L.Ed.2d 521 (1978), which explicitly states that a Rule 59 motion must be made within 10 days of judgment and that late motions do not toll the time for notice of appeal. *Browder* makes it plain that when a party fails to comply with these "mandatory and jurisdictional" time limits, both the district court and this court have no jurisdiction. 434 U.S. at 271, 272, 98 S.Ct. at 564, 565.

*Browder,* on the other hand, does make clear that Parisie's notice of appeal would give this court jurisdiction to review on an abuse of discretion standard the denial of his so-called Rule 60 Motion for Reconsideration. That would not, however, bring the underlying judgment for review, although it would be at least indirectly implicated. This undisputed avenue of review is ignored which, although limited, would avoid the jurisdiction circumvention we are now to be faced with as precedent. The majority avoids *Browder* and the rules by some "unique circumstances" exception. The exception created is so unique that I must respectfully dissent from that analysis.

In the other jurisdiction theory, Judge Eschbach, not desiring to embrace Judge Swygert's analysis, now advances an original idea not suggested by the parties. Since Judge Eschbach in his individual search of the record we have here finds no separate judgment as required by Fed.R. Civ.P. 58, it is his view that appeal time never commenced. The consequence would be that when Parisie finally did file his notice of appeal it was timely. Since this theory was not advanced by the parties, I hesitate to embrace it. I would prefer the assistance of the parties in assessing the record and the application of the law. In any event the separate document rule is not jurisdictional and may be waived by the parties. *Turner v. Air Transport Lodge 1894,* 585 F.2d 1180 (2d Cir.1978), *cert. denied,* 442 U.S. 919, 99 S.Ct. 2841, 61 L.Ed.2d 286. On December 18, 1979, in his original memorandum order, Judge Foreman awarded complete summary judgment in favor of the state and denied Parisie's application for the writ. The docket reflected that order. After that there was nothing left to the case. Judge Foreman and all the parties treated that order entered on December 18, 1979, as the final decision. There was no doubt or confusion about it being a final order when it was entered. That plainly appears from all the post-judgment pleadings no matter what their labels. Nor has any party objected to the absence of a separate judgment piece of paper, if there was in fact no such piece of paper. In my judgment the mechanical requirement of the separate judgment rule was clearly waived. *Bankers Trust Co. v. Mallis,* 435 U.S. 381, 387–88, 98 S.Ct. 1117, 1121–22, 55 L.Ed.2d 357 (1978).

Believing we should take things as we find them and not manipulate the rules to create a rubber precedent merely to reach a particular case, I respectfully dissent from all the views advanced to give this court jurisdiction.

Since a majority of this court is finding jurisdiction contrary to my view, I briefly consider this case on the assumption that we do have jurisdiction.

I believe our order to hear *en banc* vacated the entire opinion of the original panel. That order did not say otherwise nor limit the issue to be considered *en banc.* Nothing but jurisdiction, however, was argued to the *en banc* court. It is obvious that some tentative views on jurisdiction changed after *en banc* argument. Now that jurisdiction is found to exist by the majority, there is some disagreement within the majority about what to do with it. Since the merits were not argued to the *en banc* court, I decline to take any position on the merits. I would, instead, impose on the parties the burden of coming back again to argue all the issues to the *en banc* court, including the four issues not reached by the original panel.[3] After that I would be prepared to take a stand on the merits, but in the present circumstances, I respectfully decline to join my colleagues in either affirming, reversing, or remanding.

I respectfully dissent.

CUDAHY, Circuit Judge.

I was a member of the original panel which decided this case on the merits. *Parisie v. Greer,* 671 F.2d 1011 (7th Cir.1982). At that time I dissented in part from the grant of the writ, arguing that the matter should be remanded to the district court, which had never considered or decided the claim upon which the writ was granted. 671 F.2d at 1017. As a panel member I believed that we had jurisdiction, and I continue in that view. Past practice suggests that we, *en banc, could* have raised here *sua sponte* issues going to the merits, *see United States v. Gannon,* 684 F.2d 433 (7th Cir.1981) (en banc) (where the government did not even file a petition for rehearing en banc but only for rehearing by the panel). On the other hand, Judge Swygert

---

**3.** Additional oral argument is proposed for several reasons. Only two members of this nine-judge *en banc* court have heard argument on any issue except jurisdiction. Judge Esch-bach's separate document jurisdiction view was neither briefed nor argued. Oral argument might have produced a majority result in preference to this melange.

has made a persuasive argument to the contrary on this point. In any event, the key fact is that we *did* not hear argument on the merits, for the case was argued to us on the understanding that jurisdiction was the sole issue before us.

Judge Wood, in dissent, suggests that the case be brought back for reargument on the merits. I think this is a splendid suggestion, which I support. In the event that it is not adopted, however, I continue to think that only the jurisdictional question—and not the merits—is presently before this *en banc* court. This is also the view of Chief Judge Cummings who in fact confirmed this posture of the case to the parties at the beginning of the *en banc* oral argument.

As matters presently stand, I concur fully in the analysis of the jurisdictional issue made by Judge Swygert and decline to reach the merits here.

ESCHBACH, Circuit Judge.

The notice of appeal in this case is not tardy; if anything, it is premature. The district court failed to enter a judgment on a separate document as required by Fed.R. Civ.Proc. 58. Given this failure, the time limit on filing a notice of appeal never commenced running.[1] *United States v. Indrelunas,* 411 U.S. 216, 93 S.Ct. 1562, 36 L.Ed.2d 202 (1973) (per curiam). As explained in *Indrelunas,* the requirement of a separate document for judgment was added to Rule 58 in 1963 to prevent uncertainty over what actions of the district court constitute a final appealable judgment and when the time for appeal begins to run, thus preventing "occasional grief to litigants as a result of this uncertainty." *Id.* at 220, 93 S.Ct. at 1564. The case before us may present one of the most salutary applications of this admittedly highly technical, mechanical rule. While it was once thought that when this defect was discovered in the record below, a dismissal of the appeal was required in order to permit a proper "final" judgment to be prepared, *e.g., Levin v. Wear-Ever Aluminum, Inc.,* 427 F.2d 847

(3rd Cir.1970), it is now clear that a court confronted with such a situation may consider the technically premature appeal on the merits without the necessity of a formalistic remand, *Bankers Trust Co. v. Mallis,* 435 U.S. 381, 98 S.Ct. 1117, 55 L.Ed.2d 357 (1978) (per curiam), though it is in our power to remand under appropriate circumstances, *Hanson v. Town of Flower Mound,* 679 F.2d 497, 500 (5th Cir.1982) (per curiam). In my view, this case would be an inappropriate one to remand for such formalistic purposes, and I therefore believe the appeal should be considered on the merits. *See, e.g., Caperton v. Beatrice Pocahontas Coal Co.,* 585 F.2d 683, 690 (4th Cir.1978).

It is suggested, however, that the separate document requirement is not "jurisdictional" and may be waived by the parties, and hence we should ignore the fact that no such document was entered below. This position, in my opinion, represents a basic misunderstanding of the precise jurisdictional issue before us.

As previously observed, the question of whether appellate jurisdiction existed *under 28 U.S.C. § 1291* in the face of a violation of the separate document rule was in some doubt after the Supreme Court's decision in *Indrelunas.* Section 1291, which *confers* jurisdiction on the courts of appeals, requires a "final" judgment, and the question was whether a judgment was "final" if no separate judgment was entered as required by Rule 58. *Mallis* settled that question, holding that the existence of a separate document recording the judgment is not required to make the judgment a "final" one for purposes of § 1291 and that where the parties can be deemed to have waived this defect, a formalistic remand for the purpose of entering such a judgment would spin wheels for no practical purpose. After *Mallis,* our jurisdiction under § 1291 in this case is clear. The fact that the district court and the parties viewed the district court's December opinion as the final decision in the case is germane to the question

---

1. This fact also means that the ten day time limit for filing a Rule 59 motion never commenced to run. See Rule 58, 1963 Advisory Committee Notes.

of whether the decision is a "final" one under § 1291, *Bankers Trust Co. v. Mallis, supra,* 435 U.S. at 385 n. 6, 98 S.Ct. at 1120 n. 6, and the fact that no party raises the defect of the lack of a separate judgment means that a remand for purposes of entering such a document would be pointless.

The parties' attitude toward the December opinion and their failure to raise the question of the separate document rule are irrelevant, however, in determining whether this appeal is untimely. Unlike § 1291, 28 U.S.C. § 2107 and Fed.R.App.Proc. 4(a) are not affirmative grants of jurisdiction, but rather, are temporal limitations on the right to appeal. Nonetheless, just as we have a duty, sua sponte, to assure that we have § 1291 jurisdiction over any appeal before us, we have a sua sponte duty to assure that the appeal is not time barred by these provisions. In discharging that duty, we must first determine when the time for appeal commenced to run. The Supreme Court, not the parties, tells us what legal event begins the time for appeal, and it has clearly stated that "a party need not file a notice of appeal until a separate judgment has been filed and entered." *Bankers Trust Co. v. Mallis, supra,* 435 U.S. at 385, 98 S.Ct.

at 1120. This is hardly surprising, since, as *Mallis* observed, the "sole purpose" of the separate document requirement is to fix the point at which the time for appeal (and other time limits) begins to run. *See id.* at 384, 98 S.Ct. at 1120.[2] Hence, *Mallis* reaffirmed the holding in *Indrelunas* that "the separate document rule must be 'mechanically applied' *in determining whether an appeal is timely.*" *Id.* at 386, 98 S.Ct. at 1120 (citation omitted) (emphasis added).[3] It is our duty[4] to examine the record in this case to ascertain the date such a document was entered, and if it was entered, to make sure that the notice of appeal was filed within the prescribed time period. If such a document was never entered of record, it is conceptually impossible for the appeal to be time barred because the clock never started running.

In my examination of the record, I have been unable to locate such a document, no one calls such a document to my attention, and hence I am satisfied that the thirty day time limitation on appeals is not a bar to our consideration of this case. While I therefore concur in the conclusion that this court has appellate jurisdiction, I disagree

---

**2.** It should be noted that the requirement was instituted in direct response to the uncertainties present when a court enters an opinion which states a motion for summary judgment is granted, *Bankers Trust Co. v. Mallis, supra,* 435 U.S. at 385, 98 S.Ct. at 1120 (quoting advisory committee notes)—precisely the situation in the instant case.

**3.** The Court also stated that the " 'rule should be interpreted to prevent loss of the right of appeal, not to facilitate loss.' " *Bankers Trust Co. v. Mallis, supra,* 435 U.S. at 386, 98 S.Ct. at 1121 (quoting 9 Moore's Federal Practice ¶ 110.08[2], p. 120 (1970)). Moreover, these statements can hardly be considered dicta. In *Mallis* itself, the notice of appeal was filed many months after the appealed from order, and no separate judgment had been entered. The Supreme Court had granted certiorari in the case on the merits but apparently sua sponte stated at the outset of the opinion (which dismissed the writ, never reaching the merits) that the case presented a difficult jurisdictional question concerning the separate document defect which the Court of Appeals had itself recognized sua sponte. On the record before it, the Supreme Court expressly stated that the Court of Appeals properly assumed

appellate jurisdiction. While it is true that the Court did not actually expressly state that the appeal was not time barred, its sub silentio holding in that regard, taken in conjunction with the sua sponte nature of its inquiry and the repeated statements concerning the need to mechanically apply the separate document rule to timeliness questions, compels that conclusion.

**4.** The duty imposed upon us to conduct *sua sponte* inquiries into jurisdictional questions is a two way street: it is not to be invoked only to defeat jurisdiction. *Cf. Cohens v. Virginia,* 19 U.S. (6 Wheat.) 264, 404, 5 L.Ed. 257 (1824) (Marshall, C.J.) ("It is most true that this court will not take jurisdiction if it should not: but it is equally true, that it must take jurisdiction, if it should .... We have no more right to decline the exercise of jurisdiction which is given, than to usurp that which is not given.") We must decide this question on the record before us, and are obliged to notice the contents of that record, or the lack thereof, even if the parties do not. Principles of waiver, and estoppel for that matter, are simply inapposite in this regard.

with the analysis set forth in Judge Swygert's opinion.

Regarding the merits of this case, which I consider to be before the en banc court, I am persuaded by my brother Cudahy's cogent opinion dissenting in part from the panel opinion, see 671 F.2d 1011, 1017, that a remand for further proceedings is appropriate.

POSNER, Circuit Judge.

There are three issues potentially before us in this case: whether we have jurisdiction of the appeal; if so, whether we can decide the merits of the appeal even though rehearing *en banc* was granted only with respect to the jurisdictional question; if so, what our decision on the merits should be. On the first issue, I agree that we have jurisdiction for the reasons stated by Judge Eschbach, but not for the reasons stated by Judge Swygert. Although I am sympathetic to the policy of interpreting the federal rules of civil procedure liberally for the benefit of pro se prisoner litigants such as this appellant, see *Lewis v. Faulkner,* 689 F.2d 100, 102 (7th Cir.1982), I do not see how a motion for an extension of time to file a Rule 60(b) motion can be considered a Rule 59(e) motion to alter or amend the judgment. Even though the appellant was not represented by counsel when he filed his motion, the motion is literate, precise, professionally competent, and unequivocally a motion for an extension of time rather than to alter or amend the judgment. There is no room for interpretation.

We have no authority to waive the federal rules for pro se litigants. A Rule 59(e) motion tolls the 30-day limit for docketing the appeal, see Fed.R.App.P. 4(a)(4), but it must be filed within 10 days after the entry of judgment, and extensions of time to file it are not allowed, Fed.R.Civ.P. 6(b). Motions under Rule 60(b) and motions to extend the time for filing Rule 60(b) motions do not toll the 30-day limit for docketing appeals. Judge Swygert would treat a motion for an extension of time to file a Rule 60(b) motion as a Rule 59(e) motion. It is a peculiar kind of Rule 59(e) motion, since it

contains no grounds for altering or amending the judgment but is just a request for more time to present those grounds. The district judge could not act on the motion till the movant was given a chance to present his grounds—to file, as it were, his substantive Rule 59(e) motion. By this sequence the 10-day limit in Rule 59(e) would be circumvented. We cannot allow this, cf. *Western Transport. Co. v. E.I. Du Pont de Nemours & Co.,* 682 F.2d 1233, 1236 (7th Cir.1982), even if we overlook the fact that the appellant here wanted to file a Rule 60(b) rather than a Rule 59(e) motion and that if his motion for an extension of time were deemed a Rule 60(b) motion his appeal would be untimely.

This is not a case where enforcing the federal rules as written would mislead the pro se litigant. The judgment which Parisie is trying to appeal was entered on December 18, 1980, and Rule 4(a)(1) of the Federal Rules of Appellate Procedure required him to file his appeal within 30 days (in fact he filed it more than five months later). Parisie does not argue that he was ignorant of the 30-day limitation for filing his appeal, and nothing in the federal rules, civil or appellate, would lead even a layman to think that the 30-day limitation was tolled by filing a motion under Rule 60(b) or a motion for an extension of time within which to file a Rule 60(b) motion. He might miss the interplay between Rules 6(b) and 59(e) of the civil rules and thereby fail to realize that he could not get an extension of time within which to file a Rule 59(e) motion; but I cannot imagine him thinking that filing a motion for an extension of time within which to file a Rule 60(b) motion would extend the time he had to file an appeal.

Turning to the second issue, I agree with Judge Bauer that we are not prevented from reaching the merits of the appeal by the fact that the state limited its petition for rehearing with suggestion for rehearing *en banc* to the jurisdictional issue. Nothing in 28 U.S.C. § 46(c), Fed.R.App.P. 35, or Circuit Rule 16 requires this court, when it hears a case *en banc,* to limit its consideration to the issues presented in the petition for rehearing as distinct from the issues presented in the appeal itself. When rehearing *en banc* is ordered, new briefs are

not filed; instead, the members of the court who were not on the panel are given the original briefs. Thus, they have the same papers before them that the panel had and they can if they wish hear the tape recording of the oral argument made before the panel. It is not unusual for a judge who did not attend the argument to participate in a panel's decision after having read the briefs and heard the tape of the argument and there is no greater irregularity when judges who were not on the original panel participate in a decision on an issue briefed and argued before that panel but not raised in the petition for rehearing or argued at the rehearing *en banc.*

Turning, finally, to the merits of the appeal, I cannot agree that the appellant is entitled to a new trial so that he can introduce evidence that his murder victim was a homosexual, or even that a remand for further exploration of the question in the district court is warranted. Parisie wants the evidence admitted in order to bolster his defense of "homosexual panic," which is the idea that a latent homosexual—and manifest "homophobe"—can be so upset by a homosexual's advances to him that he becomes temporarily insane, in which state he may kill the homosexual. It is no business of mine whether the State of Illinois chooses to recognize a defense of "homosexual panic" as a subcategory of the insanity defense, but I cannot believe that the Constitution of the United States requires a state to allow defense counsel in a murder case to defame the murderer's victim as a homosexual without satisfying the normal prerequisite to admitting evidence of reputation—that the evidence " 'be based upon contact with the subject's neighbors and associates rather than upon the personal opinion of the witness.' " *People v. Moretti,* 6 Ill.2d 494, 524, 129 N.E.2d 709, 725 (1955), quoted in *People v. Parisie,* 5 Ill.App.3d 1009, 1034, 287 N.E.2d 310, 325 (1972).

Although it would violate the due process clause of the Fourteenth Amendment for the state to prevent Parisie from putting on a defense at his trial, *Washington v. Texas,* 388 U.S. 14, 19, 87 S.Ct. 1920, 1923, 18 L.Ed.2d 1019 (1967), it does not follow that any exclusion of relevant evidence is a denial of due process; a panel of this court had occasion to reaffirm this distinction just the

other day, see *Carbajol v. Fairman,* 700 F.2d 397, 400–401 (7th Cir.1983). Reasonable limitations on the admission of relevant evidence are not unconstitutional, and Illinois' limitation of evidence of reputation is reasonable both in general and as applied to the facts of this case. Especially in a collateral attack on conviction, where passage of time (Parisie was convicted 14 years ago) may make retrial infeasible, the only question should be whether the exclusion of relevant evidence so impeded the defendant's ability to defend himself that it may be said to have deprived him of his right to a fair trial. We must ask not whether Parisie's trial was perfect by our lights, but whether it was fair. Parisie had a fair trial—a trial that, even if not perfect (and what trial is?) satisfied, and by a generous margin, minimum standards of civilized criminal procedure.

Apart from the issue of evidence of homosexual panic, Parisie's appeal from the denial of his petition for habeas corpus raises a number of other issues. A glance at the panel's opinion, however, will show that the panel, correctly in my view, dismissed most of the alleged errors as harmless. Two, however, it dismissed as moot in view of its reversal of the district court's denial of the petition for habeas corpus on the homosexual-panic ground. The alleged errors relate to pretrial publicity and the quality of the assistance of counsel that Parisie received at his trial. The appeal briefs persuade me that the district court correctly decided these issues against Parisie and therefore that the district court's judgment should be affirmed in its entirety.

SWYGERT, Senior Circuit Judge, with whom CUMMINGS, Chief Judge, and CUDAHY, Circuit Judge, join in Parts I and II.

This case involves appellant John Stephan Parisie's appeal from the denial by the United States District Court for the Southern District of Illinois of his petition for a writ of habeas corpus. The state, contending that this court lacks jurisdiction because Parisie's notice of appeal was untimely, has repeatedly urged that the appeal be dismissed. A motion panel of this court[1] considered and summarily rejected this argument on August 4, 1980. In its briefs and

1. Chief Judge Cummings and Judge Pell.

at oral argument before a different panel[2] the state repeated its jurisdictional objection, but on February 18, 1982, the court noted jurisdiction and, reaching the merits, directed that the writ be issued. *Parisie v. Greer,* 671 F.2d 1011 (7th Cir.1982). The state petitioned for rehearing, urging that the jurisdictional holding conflicted with *Browder v. Director, Department of Corrections,* 434 U.S. 257, 98 S.Ct. 556, 54 L.Ed.2d 521 (1978), but the same panel denied the petition in an order distinguishing *Browder. Parisie v. Greer,* 685 F.2d 1016 (7th Cir. 1982). A majority of the active members of the court agreed to rehear the jurisdictional argument *en banc,* so we now consider it for the fourth time.

## I

We believe that only the jurisdictional issue, not the panel's disposition of the merits, is before us. This is true for three reasons. First, of the five votes to grant rehearing *en banc,* one[3] specified that it was "confined to the jurisdictional issue." Because that vote was necessary to create a majority of the eight possible votes, its condition limits the scope of our reconsideration. Accordingly, Chief Judge Cummings noted at the start of oral argument on October 19, 1982, that the jurisdictional issue alone was before the court, restricting the appellant's arguments to that issue.

Second, this circuit grants rehearings *en banc* in a limited class of cases, and only the jurisdictional issue satisfies those criteria. Fed.R.App.P. 35(a) provides in part that a "rehearing [en banc] is not favored and ordinarily will not be ordered except (1) when consideration by the full court is necessary to secure or maintain uniformity of its decision, or (2) when the proceeding involves a question of exceptional importance." The use of the term "ordinarily" in this rule acknowledges that the court has the power to sit *en banc, Textile Mills Secu-*

rities Corp. v. Commissioner, 314 U.S. 326, 327–35, 62 S.Ct. 272, 274–78, 86 L.Ed. 249 (1941), and that "[t]he manner in which that power is to be administered is left to the court itself." *Western Pacific Railroad Corp. v. Western Pacific Railroad Co.,* 345 U.S. 247, 259, 73 S.Ct. 656, 662, 97 L.Ed. 986 (1953). This court has determined to exercise its power only in the two situations suggested in rule 35(a). Circuit Rule 16(b) provides:

> *Required Statement for Suggestion of Rehearing In Banc.* Suggestions that an appeal be reheard in banc shall state in a concise sentence at the beginning of the petition why the appeal is of exceptional importance or with what decision of the United States Supreme Court, this court, or another court of appeals the panel decision is claimed to be in conflict.

The state does not claim that the panel's disposition of the merits is especially important or inconsistent with any other decision of this or another court, but only that the jurisdictional ruling conflicted with the decision of the Supreme Court. Under this court's criteria for rehearings *en banc,* therefore, only the jurisdictional issue qualified for reconsideration. *See United States v. Rosciano,* 499 F.2d 173, 175 (7th Cir.1974) (per curiam) (when issue was neither the subject of conflict nor of exceptional importance, rehearing *en banc* was dismissed as improvidently granted). *Cf. United States v. Doe,* 455 F.2d 753, 762 (1st Cir.), *vacated on other grounds sub nom. Gravel v. United States,* 408 U.S. 606, 92 S.Ct. 2614, 33 L.Ed.2d 583 (1972); *Local No. 1505, IBEW v. Local Lodge No. 1836, International Association of Machinists,* 304 F.2d 365, 368 (1st Cir.1962), *vacated on other grounds per curiam,* 372 U.S. 523, 83 S.Ct. 886, 9 L.Ed.2d 965 (1963); *Anderson v. Knox,* 300 F.2d 296, 297–98 (9th Cir.1962).

Finally, only the jurisdictional issue was presented by the appellee. Both the Feder-

---

**2.** Judge Cudahy, Senior Judge Swygert, and Senior District Judge William G. East (Judge East sitting by designation).

**3.** Judge Pell's. Similarly, Judge Cudahy voted to deny rehearing on the ground that only the

jurisdictional issue was presented. As he noted in the comment accompanying his vote, he would have voted to grant rehearing had the merits been presented because he had dissented in part from the decision of the panel.

al Rules of Appellate Procedure and our circuit rules require that petitions for rehearing state what points should be reconsidered. Fed.R.App.P. 40(a) provides in part that

[t]he petition shall state with particularity the points of law or fact which in the opinion of the petitioner the court has overlooked or misapprehended and shall contain such argument in support of the petition as the petitioner desires to present.

Circuit Rule 16(b), quoted above, states a similar requirement. In its petition the state claimed only that "[t]he reason for granting this request is that this Court's decision is in direct conflict with the United States Supreme Court's decision in *Browder.*" Even if this court had the *power* to grant rehearing on the merits, therefore, that power was not invoked. The state did not request such reconsideration, nor were the merits briefed to the court *en banc,* nor did the state object when Chief Judge Cummings noted that argument would be limited to the sole issue raised. Just as the Supreme Court does not address issues (other than jurisdictional ones) not presented in the petitions for certiorari and cross-petitions, *Lake Country Estates, Inc. v. Tahoe Regional Planning Agency,* 440 U.S. 391, 398, 99 S.Ct. 1171, 1175, 59 L.Ed.2d 401 (1979), and just as the courts of appeals do not address unchallenged findings of the trial courts, *In re Air Crash Disaster,* 644 F.2d 594, 608 n. 9 (7th Cir.), *cert. denied,* 454 U.S. 878, 102 S.Ct. 358, 70 L.Ed.2d 187 (1981), so this court should not reconsider issues not raised in the petition for rehearing. *Cf. Teitelbaum v. Curtis Publishing Co.,* 314 F.2d 94, 95–96 (7th Cir.) (court will decline review when a party fails to comply with circuit rule requiring appendix of the matters sought to be reviewed), *cert. denied,* 375 U.S. 817, 84 S.Ct. 52, 11 L.Ed.2d 52 (1963).

## II

The district court granted the state's motion for summary judgment on December 18, 1979. On December 27, 1979, Parisie, acting *pro se,* mailed a motion to extend the time for filing a motion to reconsider, on which the court never ruled. The basis for this request, to which the state did not object, was Parisie's lack of access to the prison law library because of abbreviated holiday hours. Parisie filed his motion to reconsider on February 1, 1980, and the district court denied it on the merits on May 8, 1980. Parisie filed a notice of appeal on June 2, 1980.

The state argues that this court lacks jurisdiction to review the summary judgment because Parisie did not file a notice of appeal within thirty days of that order, as required by Fed.R.App.P. 4(a)(1). It admits that a timely motion under Fed.R.Civ.P. 59(e) for amendment of the judgment would toll the running of the thirty-day period, *see Browder v. Director, Department of Corrections,* 434 U.S. at 264, 98 S.Ct. at 560, and that a fresh thirty days would be available following the denial of such a motion to file a notice of appeal, *see* Fed.R.App.P. 4(a)(4). The state contends, however, that Parisie's motion for reconsideration was not timely, because motions under rule 59(e) must be made within ten days of entry of judgment, and that time limit cannot be extended. *See* Fed.R.Civ.P. 6(b). It concludes that Parisie's motion for extension was ineffectual, that his motion to reconsider and notice of appeal were therefore untimely, and that this court consequently lacks jurisdiction. We reject this argument for three alternative reasons.

## A

First, we agree with the analysis presented by Judge Eschbach, *ante.* We need not fully repeat here his reasoning that no timeliness problem exists because the thirty-day notice-of-appeal period was never triggered by the entry of judgment on a separate document as required by Fed.R. Civ.P. 58. But we do wish to respond to the objections of the members of the court who reject this analysis in reliance on *Bankers Trust Co. v. Mallis,* 435 U.S. 381, 98 S.Ct. 1117, 55 L.Ed.2d 357 (1978) (per curiam).

In interpreting the separate-document requirement of rule 58, the Supreme Court held that in the absence of such a document (which is plainly lacking from the record in the present case) the notice-of-appeal period is never started and the deadline thus never accrues. *United States v. Indrelunas,* 411 U.S. 216, 221–22, 93 S.Ct. 1562, 1564–65, 36 L.Ed.2d 202 (1973) (per curiam). Some courts of appeals, including this one, interpreted this holding on the time for appeal to have an additional jurisdictional consequence, and declined to take jurisdiction of appeals from judgments not entered on a separate document on the ground that such judgments were not final. The Supreme Court rejected this interpretation in *Bankers Trust Co. v. Mallis,* 435 U.S. at 386, 98 S.Ct. at 1120, holding that the separate document is not a jurisdictional prerequisite. Rule 58 therefore has only timeliness, and not jurisdictional-prerequisite consequences: the absence of the separate document keeps the time for appeal running, but does not bar appeal. *Mallis* does not hold that the separate-document requirement can be waived for timeliness purposes. On the contrary, *Mallis* authorizes us to take jurisdiction in this case, and we have no authority to refuse it because on the issue of timeliness rule 58 is absolute.

### B

Even apart from the consequences of the separate-document rule, we find the state's jurisdictional objections to be without merit, for we may construe Parisie's December 27 motion as a motion to reconsider under rule 59(e) rather than as a mere request to extend time. Because formal pleading requirements are relaxed for *pro se* litigants, *see Haines v. Kerner,* 404 U.S. 519, 520, 92 S.Ct. 594, 595, 30 L.Ed.2d 652 (1972) (per curiam), the court may recharacterize motions in order to rescue such litigants from technical traps into which they have stumbled unawares. In *Foman v. Davis,* 371 U.S. 178, 181–82, 83 S.Ct. 227, 229–30, 9 L.Ed.2d 222 (1962), for example, the Court construed a notice of appeal from the denial of a rule 59(e) motion as a notice of appeal from the underlying judgment in order to preserve review of the merits. The Court emphasized that the appellee was not misled or prejudiced by the technical defect because an earlier, ineffective notice of appeal had been filed, and "[t]aking the two notices and the appeal papers together, petitioner's intention to seek review of both the dismissal and the denial of the motions was manifest." *Id.* at 181, 83 S.Ct. at 229. The Court concluded that "[i]t is too late in the day and entirely contrary to the spirit of the Federal Rules of Civil Procedure for decisions on the merits to be avoided on the basis of such mere technicalities." *Id.* Similarly, in *Bradley v. Coughlin,* 671 F.2d 686, 689–90 (2d Cir.1982), the court treated a *pro se* filing that combined a motion under rule 59(e) and a notice of appeal as a simple notice of appeal, excusing the litigant's mischaracterization because to do otherwise "would elevate form over substance, which is especially inappropriate in a *pro se*'s case." *Id.* at 690.

Characterizing Parisie's motion for extension as a rule 59(e) motion responds to the concerns expressed in *Foman* and *Bradley.* As in *Foman,* the state would not be misled or prejudiced by the change in label, because Parisie's intention to ask the court to reconsider was made clear within the ten-day limit. The purposes of that time limitation—to hasten corrections of defects in judgments and to assure prompt appeals if the corrections requested are denied—were therefore served by Parisie's timely but mislabeled motion. *Cf.* Fed.R.App.P. 3(e), 1979 Advisory Committee Notes ("so long as the function of notice is met by the filing of a paper indicating an intention to appeal, the substance of the rule has been complied with"). The February 1 motion for reconsideration may be treated under this reading as an amendment to the earlier motion.

It is no objection to this construction that Parisie styled his February 1 motion as one under rule 60(b). It is generally true that "[a] party should not be bound at his peril to give the proper nomenclature to his motion; this would be a retreat to the strict common law. So long as he makes a timely motion that states the ground ther[e]for,

the court should grant relief appropriate thereto." 6A J. Moore, Federal Practice ¶ 59.12[1], at 59–278 to 59–279 (2d ed. 1982) (footnotes omitted). *See Dove v. CODES-CO,* 569 F.2d 807, 809 (4th Cir.1978) (rule 60(b) motion treated as rule 59(e) motion because "if a post-judgment motion is filed within ten days of the entry of judgment it should be treated as a motion under Rule 59(e), however it may be formally styled"); *Alley v. Dodge Hotel,* 551 F.2d 442, 444–45 & n. 14 (D.C.Cir.) (same), *cert. denied,* 431 U.S. 958, 97 S.Ct. 2684, 53 L.Ed.2d 277 (1977); *Sea Ranch Association v. California Coastal Zone Conservation Commissions,* 537 F.2d 1058, 1061 (9th Cir.1976) (same); *Woodham v. American Cystoscope Co.,* 335 F.2d 551, 554–55 (5th Cir.1964) (same); *Southern States Equipment Corp. v. USCO Power Equipment Corp.,* 209 F.2d 111, 116–17 (5th Cir.1953) (same); 6A J. Moore, Federal Practice ¶ 59.04[7], at 59–26 & n. 13 (2d ed. 1982); *id.* ¶ 59.12[1], at 59–278 to 59–280 and cases cited therein; 7 *id.* ¶ 60.29, at 414 n. 4. *See also* Fed.R.Civ.P. 8(f) ("All pleadings shall be so construed as to do substantial justice."). This principle of construction has even more force in the case of *pro se* motions. *See* discussion in Part II–C below. Because the district court in the present case considered the motion under both rule 59(e) and rule 60(b) when it ruled on the merits, we are assured that we are not relying on hindsight to impose unrealistic burdens.

It is also no objection to this construction that both motions were mislabeled. Once we decide that nomenclature is unimportant, we ought not to keep count of our indulgences and apportion each litigant only one, unless by multiplication of allowances we would distort reality. No such distortion is present here. Parisie apparently felt compelled to comply with some ten-day filing requirement, so we cannot be assured that he knowledgeably relied on rule 60 alone; and the motion he did make within ten days served the purpose of that time limitation.

In fact, the district court appears to have treated the two motions in just the manner we suggest, for it never ruled on the motion for extension as such, but ruled only once, on the merits. Its failure to rule on the first motion may be interpreted as a tacit characterization of that motion as one under rule 59(e), later amended by the motion of February 1.[4]

The state conceded at oral argument that had Parisie styled his December 27 motion as a motion to reconsider, despite its lack of a researched supporting legal memorandum, he would have satisfied the time limitations. The state nevertheless urged that our power of review must turn on this nonfunctional distinction. We cannot agree. As in *Foman* and *Bradley,* such a distinction without a difference does not defeat jurisdiction.

### C

Even if we do not recharacterize Parisie's motion for extension, the lateness of his motion to reconsider (which he styled a rule 60(b) motion but which was treated by the district court as one brought under rule 59(e)) may be excused. It is true that *Browder v. Director, Department of Corrections,* 434 U.S. at 261 n. 5, 264–65, 98 S.Ct. at 559 n. 5, 560–561, holds that rule 59(e) motions must be made within ten days of judgment, and that late motions cannot toll the time for a notice of appeal. An exception to this rule exists, however, when the actions of the district court mislead a party who still has time to file a notice of appeal into allowing that opportunity to lapse. In such a case the party's noncompliance is excused even though the district court lacked the power to enlarge the time limit. *See Wolfsohn v. Hankin,* 376 U.S. 203, 203, 84 S.Ct. 699, 11 L.Ed.2d 636 (1964) (per curiam); *Thompson v. INS,* 375 U.S. 384, 387, 84 S.Ct. 397, 398, 11 L.Ed.2d 404 (1964) (per curiam); *Fairway Center Corp. v. U.I.P. Corp.,* 491 F.2d 1092, 1093 (8th Cir.

---

**4.** If, however, the district court ruled on the merits because it failed to recognize its lack of jurisdiction, it shows by its example that the requirements of the federal rules can be confusing. This demonstration buttresses the argument of Part II–C below.

1974); *Motteler v. J.A. Jones Construction Co.,* 447 F.2d 954, 955–56 (7th Cir.1971); *Eady v. Foerder,* 381 F.2d 980, 981 (7th Cir.1967); 6A J. Moore, Federal Practice ¶ 59.09[3] (2d ed. 1982); 9 J. Moore, B. Wald & J. Lucas, Federal Practice ¶ 204.12[2] (2d ed. 1982); 4 C. Wright & A. Miller, Federal Practice & Procedure: Civil § 1168 (1969). This exception has been reaffirmed post-*Browder. Needham v. White Laboratories, Inc.,* 639 F.2d 394, 398 (7th Cir.), *cert. denied,* 454 U.S. 927, 102 S.Ct. 427, 70 L.Ed.2d 237 (1981); *Hernandez-Rivera v. INS,* 630 F.2d 1352, 1354–55 (9th Cir.1980).

In most of these cases the district court misled the parties by actually granting extensions of time that were beyond its power, or by making other explicit assurances that appeal rights would not be lost. Such explicitness is not essential to the so-called "unique circumstances" exception to *Browder,* however. In *Pierre v. Jordan,* 333 F.2d 951, 955 (9th Cir.1964), for example, a notice of appeal filed within thirty days of the denial of an untimely motion under rule 59(e) was held timely, because the district court had entertained the motion and decided it on the merits, lulling the layman appellant into the belief that plentiful time for appeal existed when in fact that time was expiring.

In many ways the present case is like *Pierre.* In both, the district court treated the motion as timely; in both, the movant acted *pro se;* in both, the opposing party objected only on the merits and not on the ground of untimeliness.

In some respects, however, Parisie's case is stronger: he actually attempted to file within the ten-day limit for rule 59(e) motions, but was physically unable because of lack of access to the prison library. When he filed his motion for extension of time, he obviously failed to realize that such extensions are not allowed. This mistake is understandable, for the exception to the general rule that enlargements of time may be

granted for cause, Fed.R.Civ.P. 6(b), is not evident from the face of rules 59 and 60. Moreover, Parisie had been faced throughout his suit with the example of the state's repeated requests for extensions, always after the fact.[5] It is therefore not remarkable that Parisie overlooked rule 6 and assumed that such extensions are always permitted. The district court's failure to rule on the motion to extend seemed to confirm that assumption. It would be particularly ironic to hold that Parisie should have filed his notice of appeal despite the apparent pendency of his motion to reconsider, because if the motion were actually pending, the notice of appeal would have had no effect. *See Griggs v. Provident Consumer Discount Co.,* —— U.S. ——, 103 S.Ct. 400, 403, 74 L.Ed.2d 225 (1982) (per curiam). To hold a *pro se* litigant to such fine distinctions with such large consequences would be uncommonly strict.

In such a case of natural confusion by a *pro se* litigant, we may expect the district court to dispel the error, either by ruling on the motion or by advising the party of his mistake. This duty should be less burdensome than the one we found in *Lewis v. Faulkner,* 689 F.2d 100, 102 (7th Cir.1982), because it is triggered only when it is evident that a party misapprehends the rules, rather than being required as a prophylactic warning in every case. But even if uncorrected confusion is inevitable because of practical difficulties in monitoring the docket, the district court's blamelessness should not penalize the litigant. When the court is silent in the face of such manifest error, the party is no less misled than in the cases of explicit misadvisement noted above. Because Parisie was so misled, this case falls within the "unique circumstances" exception to *Browder.*

We conclude that, because Parisie's appeal was timely on any of these alternative grounds and because jurisdiction was the

---

**5.** The state filed four motions to extend the time for filing its brief before this court, each time past the deadline prescribed by Circuit Rule 8(a), and the last time despite the court's admonition that further tardiness would not be tolerated. Moreover, its *petition for rehearing,* which was due on March 4, 1982, was not filed until March 5; Judge East granted the state's request to file the brief instanter on March 11, 1982.

only question to be reconsidered, our inquiry is at an end. This court's disposition of the merits of the appeal, *Parisie v. Greer*, 671 F.2d 1011 (7th Cir.1982), should not be disturbed.

### III

Although I believe that the posture of this case renders consideration of issues other than jurisdiction unnecessary, I wish to respond to the views of other members of the court on the merits. My disagreement with those views is threefold.

### A

Parisie was convicted under Ill.Rev.Stat. ch. 38, ¶ 9–1 (1981) of murdering Robert Jackson. His defense was that Jackson, who had picked up the nineteen-year-old Parisie in his car, driven up a lonely road, and parked, made a homosexual advance that triggered in Parisie an irrational and disproportionate response, which either mitigated the degree of the crime, *see id.* ¶ 9–2(b) (voluntary manslaughter) (response not reasonably justified by the circumstances), or rendered him insane in that situation, *see id.* ¶ 6–2 (lack of substantial capacity to appreciate criminality or conform conduct to law), and therefore lacking the state of mind necessary for conviction under ¶ 9–1.[6] He labeled this response "homosexual panic," and was permitted at trial to submit psychiatric evidence that certain circumstances were likely to trigger such a response in him. His attempts to bolster his assertion that the triggering event—the homosexual advance—had occurred, however, were frustrated by the trial court's exclusion of testimony that Jackson had a reputation as and was a homosexual. Although the court acknowledged that such testimony was "very important" and "would be admissible," it granted the widow and children's motion in limine and issued an order prohibiting the mention of the victim's homosexuality. Hearing tr. 11–14–68 at 22–23, 29. Accordingly, the proffered testimony of three witnesses that they had had homosexual relations with Jackson and knew his reputation as a homosexual was rejected. The exclusion of this evidence was particularly damaging to Par-

isie's defense because during closing argument the prosecutor stated that "[n]o evidence [had been presented] that this man, Mr. Jackson, is or was a homosexual.... You know, it is very easy to accuse somebody of being a homosexual." Tr. 1734, 1738.

On review the Illinois Appellate Court upheld the conviction over Parisie's objection that the evidence had been wrongly excluded, on the ground that the issue had not been preserved by an adequate offer of proof. *People v. Parisie*, 5 Ill.App.3d 1009, 1033–34, 287 N.E.2d 310, 325 (1972). It reasoned that

> "reputation witnesses must be shown to have adequate knowledge of the person queried about and that evidence of reputation, to be admissible, must be based upon contact with the subject's neighbors and associates rather than upon the personal opinion of the witnesses."

*Id.,* quoting *People v. Moretti*, 6 Ill.2d 494, 523–24, 129 N.E.2d 709, 725 (1955), *cert. denied,* 356 U.S. 947, 78 S.Ct. 794, 2 L.Ed.2d 822 (1958). Two members of this court view the state's application of its procedural rule as a bar to federal review of the fairness of the trial.

Procedural defaults of this kind do not always act as such a bar, however. If a defendant shows "cause" for his failure to comply with a state's procedural rule and resultant "prejudice" from the alleged constitutional violation, a federal court may entertain his habeas petition. *See Wainwright v. Sykes*, 433 U.S. 72, 84–87, 97 S.Ct. 2497, 2505–07, 53 L.Ed.2d 594 (1977). Moreover, it is possible that a federal court need not blindly defer to the state's application of its own procedural rule, but may investigate whether the state misapplied its rule so as to shelter the alleged underlying constitutional violation from federal scrutiny. The Supreme Court has taken this course in analogous cases: it will not review state determinations of federal questions when an adequate state ground equally supports the state's decision, but it does inquire whether the state misconstrued its own law in scrutinizing the adequacy of the state ground. *See Indiana ex rel. Anderson v. Brand*, 303 U.S. 95, 100, 58 S.Ct. 443, 446, 82 L.Ed. 685 (1938); *Ward v. Board of County*

---

**6.** Parisie therefore did not urge, as some members of this court fear, that the court create a new species of insanity defense based on "homosexual panic." Rather, his argument was based on the unremarkable principle that evi-

dence of panic from any source (only incidentally related to homosexuality in this case) is relevant to the issue of the defendant's state of mind.

Commissioners, 253 U.S. 17, 22–23, 40 S.Ct. 419, 421–22, 64 L.Ed. 751 (1920); Martin v. Hunter's Lessee, 14 U.S. (1 Wheat.) 304, 456–59, 4 L.Ed. 97 (1816). By the same reasoning, if the Illinois court misconstrued its own offer-of-proof requirement in the present case, habeas review of the underlying constitutional issue should not be precluded.

Habeas review is available here under either of these rationales. The proof offered at the time the testimony of the three witnesses was excluded was defense counsel's statement that the witnesses would testify that they were acquainted with the deceased, knew his reputation as a homosexual, and had engaged in homosexual acts with him; plus counsel's similar statement in an affidavit presented during the hearing on the motion in limine, incorporated at trial by reference. There was ample "cause" for not offering more rigorous proof, because Illinois courts tolerate offers of proof made by attorneys rather than by the witnesses themselves, although they recognize that the practical purposes of the offer-of-proof requirement are sometimes better served by taking the witnesses' testimony out of the presence of the jury. See People v. Duarte, 79 Ill.App.3d 110, 123–24, 34 Ill.Dec. 657, 668, 398 N.E.2d 332, 343 (1979); People v. Johnson, 47 Ill.App.3d 362, 372–73, 6 Ill.Dec. 66, 74, 362 N.E.2d 701, 709 (1977) ("Although defense counsel here did not make a formal offer of proof by calling Flynn to the stand and making a record of his proposed testimony out of the presence of the jury, he did make clear to the court what Flynn's testimony would be if he were allowed to testify.... A formal offer of proof may have been preferable, but under the circumstances we think that defense counsel's statement to the court was sufficient to serve the purposes of an offer of proof: to give the trial court an opportunity to ascertain the admissibility of the offered evidence and to enable the reviewing court to determine whether there was prejudicial error in excluding the evidence."). Indeed, the Illinois courts hold that "an offer of proof is unnecessary whenever the trial judge understands the objection and character of the evidence but will not admit such evidence." Schusler v. Fletcher, 74 Ill.App.2d 249, 253, 219 N.E.2d 588, 590 (1966). See also Lindley v. St. Mary's Hospital, 85 Ill.App.3d 559, 566–67, 40 Ill.Dec. 749, 755, 406 N.E.2d 952, 958 (1980); People

v. Johnson, 47 Ill.App.3d at 373, 6 Ill.Dec. at 74, 362 N.E.2d at 709; People v. Limas, 45 Ill.App.3d 643, 650, 4 Ill.Dec. 242, 247, 359 N.E.2d 1194, 1199 (1977); People v. Moore, 27 Ill.App.3d 337, 344, 326 N.E.2d 420, 425 (1975). In this case the court understood the nature of the evidence offered, and excluded it because it had determined in advance to exclude categorically any evidence relating to the homosexuality of the victim. It did not hold that the testimony was incompetent as a substantive matter for lack of a foundation concerning the source of the witnesses' knowledge about the deceased. If the defendant was required at all under Illinois law to freeze the excluded testimony itself in order to preserve the issue for appeal, which I doubt, the apparent state of the law was sufficient "cause" for the procedural default. This is not a case like Engle v. Isaac, 456 U.S. 107, 102 S.Ct. 1558, 1572–75, 71 L.Ed.2d 783 (1982), in which the defendant, relying on the apparent state of the substantive law, failed to make any attempt to preserve his objection.

Even if the issue was properly preserved, however, the exclusion of the evidence might have been proper under state evidence law, and if so, habeas relief would be precluded unless constitutional considerations outweighed the state's interest in its procedural rule. See Chambers v. Mississippi, 410 U.S. 284, 302–03, 93 S.Ct. 1038, 1049–50, 35 L.Ed.2d 297 (1973). But the trial court acknowledged that the evidence "would be admissible," and I do not doubt that evaluation.

There is no consensus even in the medical and psychiatric communities whether homosexuality is a character trait (which would generally be provable under Illinois law only by evidence of reputation, see People v. Collins, 25 Ill.2d 605, 611, 186 N.E.2d 30, 33 (1962), cert. denied, 373 U.S. 942, 83 S.Ct. 1551, 10 L.Ed.2d 697 (1963)) or a medical condition (which would surely be directly provable by evidence of symptoms). In either case, however, evidence of Jackson's homosexuality would be relevant under the Illinois standard of relevancy, see People v. Peter, 55 Ill.2d 443, 459, 303 N.E.2d 398, 408 (1973) (relevant evidence is that "which tend[s] to make the proposition at issue more or less probable"), cert. denied, 417 U.S. 920, 94 S.Ct. 2627, 41 L.Ed.2d 225 (1974), because his homosexuality made it likelier that he made a homosexual advance

toward Parisie. *Cf. Evans v. United States,* 277 F.2d 354, 356 (D.C.Cir.1960) ("almost any kind of evidence showing what kind of man the decedent was would be highly relevant in helping the jury to determine whether the appellant's story of a sexual assault was truthful"). Indeed, this logical relevancy was played upon in the prosecutor's statement during closing argument that it was unlikely that a non-homosexual made such an advance. The Illinois Appellate Court's assertion that the homosexuality of the victim did not make the insanity of the defendant more likely, *People v. Parisie,* 5 Ill.App.3d at 1034, 287 N.E.2d at 325, may be true but is misguided: that was not the logical link the defendant sought to prove.[7]

The special restrictions on the use of evidence of character (if homosexuality is a character trait) do not counsel exclusion of the evidence despite its logical relevance. In comparable situations Illinois courts have admitted evidence of the character of the victim in order to show action in conformity with that character. *See, e.g., People v. Davis,* 29 Ill.2d 127, 129–30, 193 N.E.2d 841, 843 (1963) (violent disposition of deceased used to show aggression on a particular occasion); *People v. Dorff,* 77 Ill.App.3d 882, 884, 33 Ill.Dec. 300, 301, 396 N.E.2d 827, 828 (1979) (promiscuity of victim used to show consent to intercourse, prior to enactment of rape shield statute). The Federal Rules of Evidence generalize the rationale in such cases, providing that pertinent character traits of victims may be proved. Fed. R.Evid. 404(a)(2); *see* 10 J. Moore & H. Bendix, Federal Practice § 404.13 (2d ed. 1982). It seems likely that Illinois would do the same because it has recognized the absence in such cases of the considerations that counsel restraint in using character evidence against an accused. *People v. Baer,* 35 Ill.App.3d 391, 396, 342 N.E.2d 177, 181–82 (1976) (allowing evidence of specific prior acts rather than mere reputation evidence to prove aggression by a victim). *See* 1 J. Wigmore, A Treatise on the Anglo-American System of Evidence § 198 (1940).

Moreover, if homosexuality is more like a medical condition than a character trait, the reasons for excluding character evidence have even less applicability. Evidence of the condition would demonstrate something akin to capacity or opportunity: it is as if Parisie's argument were that Jackson had lunged toward him in an epileptic seizure, and proof of the victim's epilepsy were attempted. In that case, proof of prior seizures or other direct evidence of the condition, rather than reputation evidence, would be appropriate.

I note that to the extent that character was provable by prior specific acts, or to the extent that the object of proof was a medical condition, the argument concerning the adequacy of the offer of proof vanishes. The offer-of-proof rule invoked by the appellate court concerns only reputation evidence, not evidence of specific acts,[8] and Parisie's counsel's offer to prove such acts was unambiguous. We therefore have an alternative ground for reaching the merits of the alleged constitutional violation.

The reason the trial court excluded all testimony concerning the victim's homosexuality despite its acknowledged relevance appears to have been concern about its possible harmful effect on the victim's family. I assume that this decision did not constitute an abuse of discretion under applicable state law. The ultimate questions in this case are whether state law is entitled to authorize that choice, limiting the defendant's constitutional right to present a defense, and if not, whether the erroneous exclusion rendered the trial unfair.

A defendant's right to call witnesses in order to present a defense, rooted in the sixth amendment and applied to the states through the due process clause of the fourteenth amendment, *see McMorris v. Israel,* 643 F.2d 458, 460–61 & n. 3 (7th Cir.1981), *cert. denied,* 455 U.S. 967, 102 S.Ct. 1479, 71 L.Ed.2d 684 (1982), is strong. *Green v. Georgia,* 442 U.S. 95, 96–97, 99 S.Ct. 2150, 2151–2152, 60 L.Ed.2d 738 (1979) (per cu-

---

**7.** This case differs from *People v. Limas,* 45 Ill.App.3d at 649, 4 Ill.Dec. at 247, 359 N.E.2d at 1199, for the same reason: there the court rejected the defendant's argument that a logical link existed between homosexuality and violent aggression on a particular occasion.

**8.** It is improper to say that Parisie sought to present evidence of specific acts in order to demonstrate Jackson's reputation. What he sought to prove was character; reputation and specific-act evidence are alternative ways of proving that trait. *See* J. Wigmore, A Treatise on the Anglo-American System of Evidence § 52 (1940) ("Character and reputation are as distinct as are destination and journey."); Fed. R.Evid. 405;

riam); *Chambers v. Mississippi,* 410 U.S. at 302, 93 S.Ct. at 1049 ("Few rights are more fundamental than that of an accused to present witnesses in his own defense."); *Washington v. Texas,* 388 U.S. 14, 19, 87 S.Ct. 1920, 1923, 18 L.Ed.2d 1019 (1967) ("This right is a fundamental element of due process of law."). If I were deciding, as an issue of first impression, whether the state's solicitude for the victim's reputation could override this strong constitutional right, I would not hesitate to conclude that it could not. I am spared making even that decision, however, for the Supreme Court has reached the same conclusion in weighing similar interests. In *Davis v. Alaska,* 415 U.S. 308, 319–20, 94 S.Ct. 1105, 1111–12, 39 L.Ed.2d 347 (1974), it held that a state's interest in protecting the anonymity of juvenile offenders by preventing impeachment on the basis of their juvenile records could not outweigh the defendant's interest in cross-examining witnesses against him:

> Whatever temporary embarrassment might result to [the witness] or his family by disclosure of his juvenile record . . . is outweighed by petitioner's right to probe into the inference of possible bias . . . .
>
> . . . .
>
> . . . [T]he State's desire that [the witness] fulfill his public duty to testify free from embarrassment and with his reputation unblemished must fall before the right of petitioner to seek out the truth in the process of defending himself.

If anything, in *Davis* the state's interest in shielding its youth was stronger than the state interest here, because it was a generalized, statutory policy choice rather than the discretionary choice of a single judge. I conclude that the exclusion of the testimony was not warranted by a sufficiently strong state interest.

I also conclude that the exclusion rendered the trial unfair. *See Chambers v. Mississippi,* 410 U.S. at 302, 93 S.Ct. at 1049; *Washington v. Texas,* 388 U.S. at 22, 23, 87 S.Ct. at 1924, 1925. The constitutional violations and resulting unfairness in this case justify the issuance of a writ of habeas corpus.

### B

Even if it disagrees with my view of the merits of the objection to the exclusion of evidence, this court ought not affirm the district court's denial of the writ without considering Parisie's other objections. The panel opinion found dispositive its conclusion that Parisie had been denied his right to present a defense, and therefore did not reach the additional arguments concerning the lack of impartiality of the jury because of pretrial publicity and the restricted scope of voir dire, prosecutorial misconduct, and ineffective assistance of counsel. By ignoring these issues once it rejects the argument the panel found dispositive, the court deprives the defendant of complete review.

### C

Finally, I disagree with Judge Posner's assertion that speculations about the feasibility of retrial should enter our analysis of the propriety of habeas relief. That view appears to mistake the nature of habeas relief by overlooking the fact that habeas cases necessarily arise some time after trial due to the requirement that defendants exhaust state remedies, and by assuming that the risk that constitutional errors resulted in an erroneous determination of guilt shifts at some point to the defendant. It is true that some constitutional objections are not cognizable on collateral review if an opportunity for full and fair litigation was available on direct review. In *Stone v. Powell,* 428 U.S. 465, 493–95, 96 S.Ct. 3037, 3051–53, 49 L.Ed.2d 1067 (1976), the Supreme Court held that such direct review was adequate to fulfill the deterrent purpose of the exclusionary rule in search-and-seizure cases. It emphasized, however, that its holding was limited to the exclusionary-rule situation because to allow habeas relief there would add little deterrent benefit at the cost of truthfinding. *Id.* at 494 n. 37, 96 S.Ct. at 3052 n. 37. The same is not true when the constitutional violation affects the truthfinding process, as here. Accordingly, in *Jackson v. Virginia,* 443 U.S. 307, 323, 99 S.Ct. 2781, 2791, 61 L.Ed.2d 560 (1979), the Court held that the reasoning of *Stone v. Powell* does not apply when an alleged violation relates to "the basic question of guilt or innocence," despite a full and fair hearing of the issue in state court, because otherwise the principle of habeas relief would be negated:

> This argument would prove far too much. . . . Congress in [28 U.S.C.] § 2254 has selected the federal district courts as precisely the forums that are responsible for determining whether state convictions have been secured in accord with federal constitutional law. The fed-

eral habeas corpus statute presumes the norm of a fair trial in the state court and adequate state postconviction remedies to redress possible error. . . . What it does not presume is that these state proceedings will always be without error in the constitutional sense. The duty of a federal habeas corpus court to appraise a claim that constitutional error did occur—reflecting as it does the belief that the "finality" of a deprivation of liberty through the invocation of the criminal sanction is simply not to be achieved at the expense of a constitutional right—is not one that can be so lightly abjured. *Jackson v. Virginia,* 443 U.S. at 323, 99 S.Ct. at 2791. We have no authority to interpolate among the congressional prerequisites for habeas relief an additional requirement that retrial be possible.

#### IV

I believe that because there was no jurisdictional impediment to this court's consideration of this appeal, the opinion of the panel should not be disturbed. If I were to reconsider the merits of the appeal, however, I would adhere to the determination of the panel that a writ of habeas corpus should issue.

#### ORDER

On June 27, 1983, petitioner-appellant John Stephan Parisie filed a motion for reconsideration of the court's *en banc* decision entered on March 28, 1983. A majority of the members of the court voting on the motion have voted not to grant the motion. The motion for reconsideration is therefore DENIED.\*

CUDAHY, Circuit Judge, with whom WOOD and FLAUM, Circuit Judges, concur, dissenting from the denial of the petition for reconsideration:

Parisie seeks reconsideration of our *en banc* decision by which a majority of the court found that (1) we had jurisdiction of the appeal and (2) the petition for writ of habeas corpus should be denied on the merits. I think there are grave questions of due process in a procedure whereby an *en banc* rehearing was granted *only* on the issue of jurisdiction, the court decided for the defendant on this issue and then went

\* Chief Judge Cummings did not participate in the consideration or decision of this motion.

on to decide against him on the merits. At the *en banc* rehearing Chief Judge Cummings clearly confirmed from the bench that *only* jurisdiction was in issue. I see nothing fair about a procedure where the decision is made on a basis specifically excluded before argument from consideration.

I therefore respectfully dissent from denial of the petition for reconsideration.

SWYGERT, Senior Circuit Judge, dissenting from the denial of the petition for reconsideration:

I join fully in Judge Cudahy's dissent, but write separately to stress an additional reason why reconsideration would be appropriate. The district court below denied Parisie's habeas petition, and a panel of this court reversed, finding one of the several arguments for granting the relief dispositive. When this court rejected that argument on rehearing *en banc,* it affirmed the district court without considering Parisie's additional arguments. As I noted in my dissent from the *en banc* decision on the merits, Parisie was thus denied complete review. *Parisie v. Greer,* 705 F.2d 882, 902–03 (7th Cir.1983). If it were proper for the court to consider the merits (which Judge Cudahy persuasively demonstrates was not the case), it should have done so completely. I therefore dissent from the denial of reconsideration.