671 F.2d 686
 Kenneth BRADLEY, Plaintiff-Appellant,
v.
Thomas COUGHLIN, Commissioner, Department of Correctional
Services; Eugene Reynolds, Deputy Superintendent, Auburn
Correctional Facility; and Robert Henderson, Superintendent,
Auburn Correctional Facility, Defendants-Appellees.
 No. 256, Docket 81-2141.
 United States Court of Appeals,
Second Circuit.
 Argued Oct. 27, 1981.
Decided Jan. 27, 1982.
 
 Gerald T. Ford, New York City, for plaintiff-appellant.
 Carl E. Stephan, Asst. Atty. Gen. of the State of N. Y. (Robert Abrams, Atty. Gen. of the State of New York, William J. Kogan, Asst. Atty. Gen. of the State of N. Y., Albany, N. Y., of counsel), for defendants-appellees.
 Before FEINBERG, Chief Judge, FRIENDLY, Circuit Judge and PIERCE, Circuit Judge.*
 PIERCE, Circuit Judge:
 
 
 1
 This is an appeal from an order of Judge James T. Foley of the Northern District of New York dismissing plaintiff's pro se civil rights complaint. Plaintiff alleged that while he was a prisoner at Auburn Correctional Facility he was wrongfully beaten and confined in a Special Housing Unit (SHU) for which he demanded damages as well as declaratory and equitable relief. The complaint was brought pursuant to 42 U.S.C. § 1983; jurisdiction was predicated on 28 U.S.C. § 1343.
 
 FACTS
 
 2
 This case arose from an incident which occurred at New York State's Auburn Correctional Facility on October 10, 1979. Plaintiff-appellant Kenneth Bradley, then an inmate at Auburn, became involved in a dispute with a correctional officer. According to defendants, Bradley provoked the incident by throwing a bucket of "coffee, urine and human defecation" on the officer.
 
 
 3
 A report of the incident was made to Deputy Superintendent Reynolds who ordered Bradley moved to a plexiglass cell. A joint affidavit signed by thirteen of Bradley's fellow inmates states that as many as seven correctional officers came to Bradley's cell, handcuffed him, and beat him severely. Bradley was then allegedly dragged by the hair, bleeding, to the plexiglass cell.
 
 
 4
 Bradley was charged with several violations of prison regulations, and a disciplinary proceeding was instituted. Without hearing plaintiff's version of the incident, as is required by 7 N.Y.C.R.R. § 252.3(f),[1] the prison's Adjustment Committee referred the matter to a Superintendent's Proceeding.[2] This proceeding was not held until November 21, 1979, 42 days after the incident, despite a requirement that under normal circumstances such proceedings are to be held within seven days of an inmate's confinement in SHU. See Powell v. Ward, 542 F.2d 101, 103-04 (2d Cir. 1976); Allison v. Wilmont, 101 Misc.2d 632, 633-34, 421 N.Y.S.2d 760, 762 (Sup.Ct.1979). Bradley was confined in the SHU during the 42 days.[3]
 
 
 5
 On November 21, 1979, a hearing was held by Deputy Superintendent Taylor who, in contravention of 7 N.Y.C.R.R. § 253.4(c), apparently did not interview any prison employees who had directly witnessed the incident.[4] This failure occurred despite Bradley's denial of the charges against him and some evidence that Bradley sustained injuries at the time of the incident with the correctional officers.
 
 
 6
 On the same date, Deputy Superintendent Reynolds, who had not conducted the proceeding, rendered a decision finding Bradley guilty of all charges and ordering him confined in the SHU for 90 days. Bradley was also deprived of 90 days of "good time" towards release. Reynolds' only stated reason for this disposition was "serious report." Bradley claims that the decision was in violation of 7 N.Y.C.R.R. § 253.4(i), which requires that the deciding officer state the evidence upon which his decision is based.[5] More crucially, it is apparent that 7 N.Y.C.R.R. § 253.2(d) did not permit Reynolds to act as the hearing officer, since it is undisputed that he was involved in the incident being reviewed.[6]
 
 
 7
 Bradley appealed Reynolds' decision to the New York State Department of Correctional Services. On February 27, 1980, after Bradley had spent 90 days in the SHU, the Department reversed the decision. Citing the failure of the Superintendent's Proceeding to provide Bradley with due process, the Department restored Bradley's 90 days of good time.
 
 
 8
 On October 9, 1980, Bradley filed the pro se action in the District Court for the Northern District of New York which is the subject of this appeal. In his complaint Bradley asked for a declaratory judgment, a preliminary injunction, and "damages for time in the Box, SHU." On November 10, 1980, Bradley filed a proposed amended complaint which set forth his claims for relief with greater specificity: among other things, Bradley prayed for damages of $25 per day for each of the ninety days spent in SHU, $25 per day in lost wages for ninety days, and punitive damages of $2250.
 
 
 9
 Defendants moved pursuant to Rule 12(b)(6) of the Fed.R.Civ.P. to dismiss the complaint, arguing that the State Department of Correctional Services' reversal of the Superintendent's Proceeding decision rendered any equitable claims moot, since the good time had been restored. Regarding the damages claims, defendants maintained that any damages plaintiff might have sustained were too remote and speculative for judicial determination.
 
 
 10
 On February 26, 1981, the district judge filed a decision and order granting defendants' motion to dismiss on essentially the grounds urged by defendants, and denying Bradley's requests to file an amended complaint and to take discovery. Four days later, on March 2, 1981, the clerk of the court sent Bradley a card informing him of the decision.
 
 
 11
 This card did not reach Attica Correctional Facility, where he was then incarcerated, until March 4, 1981, and he did not receive the card until the following day. Bradley prepared a "Motion to Reconsider Order or in the Alternative, Motion for Leave to take an Interlocutory Appeal In Forma Pauperis," ("first notice of appeal"), which he served on March 11, 1981. Defendants did not object to this motion as untimely and the district court did not inform Bradley of any problems in this respect.
 
 
 12
 On March 20, 1981, Judge Foley signed a decision and order stating that the motion had been considered and was denied. This order was filed on March 23, 1981. On April 15, 1981, plaintiff pro se filed a notice of appeal from the March 20th order ("second notice of appeal").
 
 JURISDICTION
 
 13
 Before reaching the merits of issues raised by the appellant, we must consider which of the two notices serves as a basis for this appeal and determine whether this Court has appellate jurisdiction to hear it. We note that during the period that this case was in the district court, Bradley was a pro se litigant. It has long been settled and Judge Foley noted that pro se pleadings are to be held "to less stringent standards than formal pleadings drafted by lawyers." Haines v. Kerner, 404 U.S. 519, 520, 92 S.Ct. 594, 595, 30 L.Ed.2d 652 (1972).
 
 
 14
 In his March 11th "motion", Bradley not only sought a reconsideration but, in two different paragraphs, his preamble and his prayer for relief, he stated that he wished to appeal. His prayer for relief states that
 
 
 15
 "(i)n the alternative, petitioner requests leave to take and (sic) interlocutory appeal in forma pauperis to the United States Court of Appeals for the 2nd Circuit from this court's order entered herein on February 25, 1981."
 
 
 16
 Thus unequivocal notice was given to defendants and the district court of Bradley's intention to appeal the dismissal of his complaint. Unquestionably, the trial judge's order filed February 26, 1981, was a final order and therefore was appealable. The district court's action of February 26th was adhered to in its later order signed March 20, 1981. Bradley's self-styled "Motion to Reconsider Order or in the Alternative, Motion for Leave to take an Interlocutory Appeal in Forma Pauperis," having been entered on the docket sheet by the clerk on March 23, 1981, was obviously filed within thirty days of the February 26th final order.[7]
 
 
 17
 Rule 3(c) of the Fed.R.App.P. provides that "(t)he notice of appeal shall specify the party or parties taking the appeal; shall designate the judgment, order or part thereof appealed from; and shall name the court to which the appeal is taken." Rule 4(a)(1) requires that the notice of appeal is to be filed with the clerk of the district court "within 30 days after the date of entry of the judgment or order appealed from." Bradley's first notice of appeal meets all of these requirements.
 
 
 18
 Bradley seems to have been unaware that he was entitled to appeal as of right from the district court's final order of February 26, 1981, independently of the purported Rule 59(e) motion. He did not need leave of the district court in order to appeal and the district judge could not deny him his right to appeal. The fact that he made two applications simultaneously does not alter the fact that he did file the first notice of appeal timely.
 
 
 19
 With respect to the alternative aspect of the first notice of appeal and the mischaracterization of it as an "interlocutory appeal", we believe, as was stated in Alley v. Dodge Hotel, that "it is clear beyond cavil that Appellate Rules 3 and 4 tolerate a common sense approach ... and do not insist upon 'literal compliance in cases in which it cannot fairly be exacted....' " 501 F.2d 880, 884 (D.C.Cir.1974), cert. denied, 431 U.S. 958, 97 S.Ct. 2684, 53 L.Ed.2d 277 (1977) (quoting the Advisory Committee Note to Fed.R.App.P. 3).
 
 
 20
 We note that so much of Bradley's March 11th "motion" as purported to be a Fed.R.Civ.P. 59(e) motion for reconsideration may have been untimely with respect to the literal requirements of that rule. However, we need not address this issue, since we conclude that for purposes of appeal from the district court's February 26th order, Bradley's March 11th notice of appeal was both timely and adequate.[8] The notice served its primary purpose of notifying the state that an appeal would be taken. To nullify its effect merely because it was poorly denominated and attached to a demand for reconsideration that was out of time would elevate form over substance, which is especially inappropriate in a pro se's case. Therefore we have jurisdiction to hear this appeal. The second notice of appeal raises no new issues in terms of the ultimate relief sought and may be considered superfluous and thus is consolidated with the first notice of appeal.
 
 THE MERITS
 
 21
 Turning to the merits, it is initially apparent that as "(a) pro se plaintiff, particularly one bringing a civil rights action, (Bradley) should (have been) afforded an opportunity fairly freely to amend his complaint." Holmes v. Goldin, 615 F.2d 83, 85 (2d Cir. 1980); see also Owens v. Haas, 601 F.2d 1242 (2d Cir. 1979), cert. denied, 444 U.S. 980, 100 S.Ct. 483, 62 L.Ed.2d 407 (1981). The complaint filed on October 9, 1980, requested damages for the time Bradley alleges he wrongfully was confined in SHU. In United States ex rel. Larkins v. Oswald, 510 F.2d 583 (2d Cir. 1975), a case similar to the present one, this Court affirmed an award of $1000 to a prisoner who was wrongfully kept in solitary confinement for twelve days. On this basis alone, it is apparent that the complaint adequately stated a claim for relief sufficient to withstand a Rule 12(b)(6) motion to dismiss.
 
 
 22
 Further, Bradley's claim for 90 days of lost wages at $25 per day could hardly be considered remote or speculative. We note that the order dismissing the complaint failed to directly consider this claim. No reason was assigned for not doing so, although Bradley's proposed amended complaint had brought this claim to the district court's attention. Lost prison wages are ascertainable and recoverable. See Mack v. Johnson, 430 F.Supp. 1139, 1150-51 (E.D.Pa.1977), aff'd mem., 582 F.2d 1275 (3d Cir. 1978); Landman v. Royster, 354 F.Supp. 1302, 1319 (E.D.Va.1973). Therefore, plaintiff adequately stated a claim with regard to the wages lost while he was in SHU.
 
 
 23
 In addition, nominal damages are available in a § 1983 action if a plaintiff can show he was denied due process, even "without proof of actual injury." Carey v. Piphus, 435 U.S. 247, 266, 98 S.Ct. 1042, 1053, 55 L.Ed.2d 252 (1978). Finally, with respect to damages, under the proper circumstances punitive damages may be available in a § 1983 action. Carlson v. Green, 446 U.S. 14, 22, 100 S.Ct. 1468, 1474, 64 L.Ed.2d 15 (1980).[9]
 
 
 24
 The district court's order dismissing Bradley's pro se complaint is reversed and the case is remanded for further proceedings consistent with this opinion.
 
 
 
 *
 When this appeal was heard, Judge Pierce was a District Judge for the Southern District of New York, sitting by designation. He was inducted as a judge of this court on November 30, 1981
 
 
 [1]
 7 N.Y.C.R.R. § 252.3(f) provides that "(w)here an inmate is being held in confinement in his cell or room or in a special housing unit, the committee shall interview the inmate at its first meeting following the date of confinement."
 
 
 [2]
 7 N.Y.C.R.R. § 253(1)(a) provides that "(i)n any case where there is reasonable cause to believe that an inmate's behaviour has constituted a danger to life, health, security or property ... the superintendent may direct that a superintendent's proceeding be held." Upon the Superintendent so directing, 7 N.Y.C.R.R. § 253(2) requires that an employee of the correctional facility file formal charges against the prisoner, and the Superintendent must designate a person to conduct the proceeding
 
 
 [3]
 In the present case, 16 of the 42 days spent in SHU prior to the Superintendent's Proceeding were apparently the result of a different and unrelated disciplinary proceeding. Bradley does not contend that his confinement in SHU during these 16 days was wrongful. Therefore, his alleged wrongful confinement prior to the Superintendent's Proceeding was for a period of 26 days. However, his total confinement in SHU resulting from the October 10, 1979, incident was apparently 90 days
 
 
 [4]
 7 N.Y.C.R.R. § 253.4(c) provides that "(t)he person conducting the proceeding shall interview one or more employees who witnessed or have direct knowledge of the incident and he may also interview any other person who can be of assistance in contributing relevant information."
 
 
 [5]
 7 N.Y.C.R.R. § 253.4(i) provides that "(a) written disposition including a statement of the evidence relied upon and reasons for the disciplinary action shall be provided to the inmate following the proceeding."
 
 
 [6]
 7 N.Y.C.R.R. § 253.2(d) provides in relevant part that "(t)he following persons shall not ... under any circumstance be appointed to conduct the (Superintendent's Proceeding): ... a person who was directly involved in the incident."
 
 
 [7]
 Judge Foley signed the order dismissing the complaint on February 25, 1981, and this order was filed on February 26th. Bradley served his first notice of appeal on March 11, 1981. This notice was stamped as received by the clerk of the court on March 17, 1981, although it was not filed until March 23rd
 
 
 [8]
 The Court notes that there may be other routes by which this conclusion might be reached. In particular, we might find jurisdiction under the doctrine represented by the leading case of Thompson v. Immigration and Naturalization Service, 375 U.S. 384, 84 S.Ct. 397, 11 L.Ed.2d 404 (1964). Since the basis upon which we find that we have jurisdiction is more direct, however, we need not consider other grounds
 
 
 [9]
 We note in addition that Bradley may be entitled to the equitable remedy of the expungement from his record of the disciplinary proceeding. Since expungement can affect a prisoner's future rights and privileges in the prison system, the issue is not de minimis. See Powell v. Ward, 487 F.Supp. 917, 935 n.16 (S.D.N.Y.1980), modified 643 F.2d 924 (2d Cir. 1981), cert. denied, --- U.S. ----, 102 S.Ct. 131, 70 L.Ed.2d 111 (1981). This issue may have been mooted by the action of the State Department of Correctional Services in reversing the decision made by Superintendent Reynolds. In a letter dated December 31, 1981, the New York State Attorney General's office informed the Court that the Department of Correctional Services has stated that references to the November 21, 1979, disciplinary proceeding have been expunged from Bradley's record. If the district court determines this to be the case, the issue will, of course, be moot