**Angel LOPEZ, Plaintiff,**

**v.**

**Benjamin WARD; Otis Bantum; Sherri Kingston; Robert Keith; Kenneth Jameson; "Dr. Berman"; Richard Pankowitz, M.D.; Emanuel Wilkes, M.D.; Montefiore Hospital and Medical Center; City of New York, Defendants.**

**No. 85 Civ. 9195 (KC).**

United States District Court,
S.D. New York.

Feb. 26, 1988.

## OPINION AND ORDER

CONBOY, District Judge:

This case involves a prisoner who has suffered total blindness in one eye following an accident while incarcerated in the City jail at Rikers Island. His civil rights claim asserts that the City and its agents caused his blindness through the establishment and maintenance of a policy of inadequate and substandard medical care at the Rikers Island facility.

In substance, he alleges that after sustaining a detached retina of the right eye, and after many pleas for help, he was denied access to adequate treatment for a period of six days and that this delay, the consequence of an established pattern of neglect, resulted in the irretrievable loss of sight in his right eye.

The case involves interesting questions of pleading, time bar rules, and *res judicata*, in combination, and the humane principle, well established in the law, that a *pro se* plaintiff, alone in the thickets of the law, ought to be accorded greater latitude in meeting technical procedural requirements than those with the professional assistance of lawyers.

In January, 1984, plaintiff Angel Lopez commenced a 42 U.S.C. § 1983 action against the City of New York and Thomas Murray, who at the time was the Warden of the House of Detention for Men on Rikers Island. Plaintiff alleged in his *pro se* complaint that while incarcerated at HDM in September, 1982, he fell and seriously injured his eye and did not receive timely medical treatment. Plaintiff's action (Lopez 1) was dismissed on defendants' unopposed motion, pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure, for failure to state a claim upon

which relief may be granted, in that the complaint did not allege any personal involvement on the part of Warden Murray and did not allege that the City had implemented an unlawful practice or policy which caused the alleged deprivation of plaintiff's rights. The order dismissing the complaint stated that Lopez's allegations were serious but that Murray and the City were not proper parties, based upon the complaint as drawn.

On September 4, 1985, Lopez filed another *pro se* complaint (Lopez 2) which stated his allegations in somewhat greater detail. The complaint again named as defendants Warden Murray and the City of New York, and also named as defendants Jacqueline McMickens, the Commissioner of Correction at that time, and "Dr. Kingston," described as the supervising doctor at Rikers Island Hospital "on the night of the event."

After obtaining appointed counsel, plaintiff sought leave to serve and file an amended complaint which asserted new claims and added new parties.[1] Defendants opposed the motion for leave to amend on the ground that the new claims against the original defendants and all of the claims against the proposed additional defendants were barred by the statute of limitations. The Court granted plaintiff's motion for leave to amend the complaint, stating that "any motion regarding the sufficiency of the claims as amended may be made following service of the amended complaint."

The amended complaint added the following defendants: former Commissioner of Correction Benjamin Ward; former Warden of HDM Otis Bantum; Montefiore Hospital, which operates Rikers Island Health Services; Robert Keith And Kenneth Jameson, two physician's assistants employed at Rikers Island Health Services in September 1982; Dr. Wilkes, a physician employed by Montefiore at Rikers; and several unknown physicians also employed by Montefiore at Rikers. The unknown physicians were later identified as Richard Pankowitz and Jeffrey Berman.

The amended complaint sets forth five claims for relief. The first two claims, addressed to the physicians and the physician's assistants, allege that the defendants were deliberately indifferent to plaintiff's medical needs which resulted in the loss of sight in plaintiff's right eye. The third claim, addressed to Commissioner Ward, Warden Bantum, and Montefiore Hospital, alleges that the defendants failed to correct serious and obvious deficiencies in the medical care procedures at HDM. The fourth and fifth claims allege that the City of New York implemented unlawful policies and practices which caused the alleged deprivation of plaintiff's rights.

Although defendants' motion raises several distinct issues, their resolution turns, in large measure, on the court's interpretation of Lopez's *pro se* pleadings in *Lopez 1* and in this action. In construing the two complaints, therefore, the court must be guided by the Supreme Court's mandate that *pro se* complaints be held "to less stringent standards than formal pleadings drafted by lawyers." *Haines v. Kerner,* 404 U.S. 519, 520, 92 S.Ct. 594, 596, 30 L.Ed.2d 652 (1972).[2]

### 1. Claims against the City of New York.

Defendant City of New York contends that the new claims against it, alleging an unlawful policy, do not "relate back" to the claim against the City in the original complaint and are thus barred by the three year statute of limitations applicable to § 1983 claims. *Okure v. Owens,* 816 F.2d 45 (2d Cir.1987). If the claims do relate back and are not time-barred, the City argues that such claims are barred under the doctrine of *res judicata* by the judgment in *Lopez 1.* Plaintiff contends that Judge

---

1. The proposed amended complaint substituted Benjamin Ward and Otis Bantum as defendants in place of McMickens and Murray. The original complaint named Robert Morgenthau, the District Attorney for New York County, as a defendant but the Court dismissed the complaint as against him before Lopez sought leave to amend.

2. "[A] *pro se* litigant should be afforded every reasonable opportunity to demonstrate that he has a valid claim." *Satchell v. Dilworth,* 745 F.2d 781, 785 (2d Cir.1984).

Weinfeld's decision granting plaintiff leave to amend his complaint resolved the Rule 15(c) and *res judicata* issues in plaintiff's favor. Consequently, the first question is whether the City should be foreclosed from rearguing these issues.

■ Rule 15(a) of the Federal Rules of Civil Procedure provides that a "party may amend the party's pleading ... by leave of court ... and leave shall be freely given when justice so requires." If an amended pleading adds a new claim or asserts a claim against a new party and the applicable statute of limitations period has expired between the filing of the original and amended pleadings, a question arises as to whether the amended pleading relates back to the date of the original pleading. That question is governed by Rule 15(c), which by its terms, comes into play *after* a pleading is amended. When a court grants leave to amend a pleading pursuant to Rule 15(a), it does not necessarily determine whether otherwise untimely claims are saved by Rule 15(c). Lest there be any doubt that the order granting the plaintiff leave to amend did not resolve the issues raised in defendants' motion to dismiss, Judge Weinfeld expressly provided that "any motion regarding the sufficiency of the claims as amended may be made following service of the amended complaint."

Under Rule 15(c), a claim asserted in an amended pleading relates back to the original pleading if it arises "out of the conduct, transaction, or occurrence set forth or attempted to be set forth in the original pleading." The core inquiry under the rule "is whether adequate notice is given to the opposing party by the general ·fact situation alleged in the original pleading." *Holdridge v. Heyer–Schulte Corporation of Santa Barbara*, 440 F.Supp. 1088, 1093 (N.D.N.Y.1977).

*Lopez 1* was dismissed because the complaint, read broadly, failed to allege an unlawful policy or custom which caused the violation of Lopez's rights. The original *pro se* complaint in this action indicates that Lopez thought the dismissal was without prejudice and that he was attempting to cure the first complaint's deficiencies. Although defendants' contend that Lopez's original complaint in this action essentially sets forth the same factual allegations contained in *Lopez 1*, the defendants' answer contains the affirmative defense that defendants' "did not implement or maintain an unlawful policy or custom which caused a violation of plaintiff's rights." In effect, defendants understood that Lopez was attempting to allege that the City maintained an unlawful policy and responded to that allegation in their answer. Thus, despite Lopez's inability to invoke the proper language, it was obvious to defendants—and is obvious to the court in light of *Lopez 1*—that he was attempting to allege that the City maintained an unlawful policy or practice which caused the deprivation of his rights.

■ The court, however, need not rely on a construction of Lopez's original complaint because the amended claims clearly relate back to the original complaint. As already noted, the central inquiry under Rule 15(c) is whether the general fact situation alleged in the original pleading puts the opposing party on notice of the amended claims. The city cannot seriously contend that it received no notice of the amended claims when the City anticipated and responded to these claims several months before they were made.

The City argues, in the alternative, that if the claims asserted against the City are based upon the same conduct alleged in the original complaint, they must have the same factual predicate as the claim in *Lopez 1* and should, therefore, be barred under the doctrine of *res judicata.*[3]

---

**3.** In effect, the defendants postulate a symmetry between the standard for determining when a claim relates back under Rule 15(c) and the standard for determining when claims are identical for purposes of *res judicata.* This argument is flawed for several reasons. First, the original complaint could be read to state Lo-

pez's illegal-policy-or-practice theory despite its facial similarity to the complaint in *Lopez 1.* Second, the Court's conclusion under Rule 15(c) was not based upon a detailed analysis of whether the new claims "arose out of the conduct, transaction, or occurrence set forth in the original pleading" but on the common sense

Lopez's first argument in response is that the decision in *Lopez 1* should not be viewed as a final judgment on the merits. Lopez contends that Judge Duffy would have granted him leave to replead had he the wherewithal to so move or had he been represented by counsel because the opinion dismissing the complaint indicates that the judge thought he could state a valid claim under § 1983 and because the judge "would have been mindful of the strong policy in favor of granting *pro se* plaintiffs leave to amend." Indeed, Lopez cites several cases for the proposition that a denial of leave to replead would have been an abuse of discretion subject to reversal on appeal. *See, e.g., Bradley v. Coughlin,* 671 F.2d 686, 690 (2d Cir.1982). Although Lopez presents persuasive arguments as to what might have happened had he moved to replead before Judge Duffy or had he appealed a denial of the same, Lopez has done neither and this court must respect the preclusive effect of the decision in *Lopez 1.* "[T]he res judicata consequences of a final, unappealed judgment on the merits [are not] altered by the fact that the judgment may have been wrong ..." *Federated Department Stores, Inc. v. Moitie,* 452 U.S. 394, 398, 101 S.Ct. 2424, 2428, 69 L.Ed. 2d 103 (1981). Consequently, to the extent that Lopez's present claims against the City rely on the same factual predicate as the claim in *Lopez 1,* those claims are barred.

Lopez's second argument is that his present claims against the city are not the same as those alleged in *Lopez 1.* An earlier judgment on the merits "does not bar a [subsequent] suit on a different cause of action." 1B Moore, Moore's Federal Practice para. 0.410 at 348–49 (2d ed. 1985). Courts within this Circuit have applied the following three prong test for determining whether two causes of action are the same for *res judicata* purposes:

[W]hether a different judgment in the second action would impair or destroy rights or interests established by the judgment entered in the first action, whether the same evidence is necessary to maintain the second cause of action as was required in the first, and whether the essential facts and issues in the second were present in the first. *National Ass'n of Pharmaceutical Mfrs. v. Department of Health,* 586 F.Supp. 740, 745 (S.D.N.Y.1984) (quoting *Herendeen v. Champion International Corp.,* 525 F.2d 130, 134 (2d Cir.1975)).

In *National,* a trade association of Drug manufacturers challenged the legality of an FDA regulation on a wide variety of legal theories. In an earlier lawsuit, the association challenged the FDA's authority to promulgate the regulations as substantive rather than interpretive regulations. Relying on *Teltronics Services, Inc. v. LM Ericsson Telecommunications, Inc.,* 642 F.2d 31, 35 (2d Cir.) *cert. denied,* 452 U.S. 960, 101 S.Ct. 3108, 69 L.Ed.2d 971 (1981), the government argued that the judgment in the prior action precluded the second because a final judgment is *res judicata* to all matters that should have been pleaded or litigated as well as to those that actually are pleaded or litigated.

Applying the three prong test, the court found that a judgment on the claims challenging the content and scope of the regulations would not impair the FDA's interest in the earlier judgment. The earlier judgment established the FDA's authority to promulgate substantive regulations and a judgment on the content of those regulations would have no effect on the earlier ruling. The court also found that the remaining claims would either involve a review of evidence which was not necessary to the earlier decision or would involve a substantially different inquiry than was required in the earlier action "although the

determination that the original complaint gave the City adequate notice of the new claims. Finally, even if the new claims did arise out of the occurrence or occurrences set forth in the original pleading, defendants have cited no authority which recognizes a symmetry between

the liberal standard governing Rule 15(c) and the standard governing identicalness of claims for purposes of *res judicata.* Hence, the Court's ruling on relations back does not necessarily determine the Court's conclusion on the *res judicata* question.

'facts' and 'evidence' [were] in some sense the same."

Finally, the court found that plaintiffs' need for a prompt determination of the legal effect of the regulations in the earlier action justified plaintiffs' failure to advance the claims contained in the latter. The court distinguished *Teltronics* as a case involving an attempt to bring two identical claims in separate consecutive actions.

In *Bridge C.A.T. Scan Associates v. Ohio–Nuclear Inc.*, 608 F.Supp. 1187 (S.D. N.Y.1985), a company called Technicare asserted claims against a former employee for, inter alia, tortious interference with business relations and trade libel. In an earlier action against the same employee, Technicare alleged that he had stolen Technicare's customer list and had given it to a third party "for the purpose of injuring Technicare's business and reputation." In the second action, the former employee moved for summary judgment on grounds of *res judicata.*

Observing that the " 'crucial' factor in determining whether claims are 'the same' is the factual predicate underlying them," the court found that the facts underlying the two actions were substantially different. The first action involved a single discrete issue: the dissemination of confidential customer information. The second action involved a course of conduct aimed at injuring Technicare's public reputation. Likewise, the evidence required to support the first and second actions was different. The first required proof of "the confidential nature of the information, how the information was obtained, and its dissemination." The second turned on the motives and justification of the defendant in disseminating the information. That both claims overlapped in their factual allegations did not render them the same for *res judicata* purposes.

■ Applying the three prong test, the court finds that Lopez's amended complaint asserts a new claim against the City and, therefore, plaintiff's action is not barred by *res judicata.* Although the immediate injury in both actions is Lopez's loss of eyesight, the essential facts in the amended complaint, and the evidence necessary to support Lopez's claims, involve the practice of "an official policy or custom of acquiescence in or implicit ratification of the ... denial of adequate medical care to inmates at HDM." In contrast, *Lopez 1* involved allegations of "a single incident." Finally, no judgment obtained by Lopez in this action would impair or destroy the City's interests under the prior judgment. The prior judgment determined that the City could not be held liable under § 1983 for a single incident. As already noted, that decision is binding on this court and if Lopez establishes that his rights were violated without establishing that they were violated pursuant to an illegal City policy, he cannot relitigate the issue of whether the City should be held vicariously liable for a single violation of Lopez's rights.

In determining this issue, the court must be mindful that "a *pro se* litigant should be afforded every reasonable opportunity to demonstrate that he has a valid claim." *Satchell v. Dilworth*, 745 F.2d 781, 785 (2d Cir.1984). The plaintiffs in *Bridge, supra,* and *National, supra,* were permitted to assert claims which undeniably had some connection to claims asserted in earlier lawsuits although, unlike Lopez, those plaintiffs were represented by counsel and were in a much better position than Lopez to assert all their claims in the earlier actions. Lopez has made every effort to comply with an often bewildering array of procedural and substantive rules and had he earlier moved for leave to replead, instead of inadvertently filing a separate complaint, the Court would have most certainly considered approving leave, in light of *Bradley v. Coughlin*, 671 F.2d 686 (2d Cir.1982). Under these circumstances, the Court finds that Lopez's claims against the city are not barred by the judgment in *Lopez 1.*

**2. Claims against the new Defendants.**

Defendants contend that the claims against all of the new defendants do not relate back to the original complaint and are time-barred. Rule 15(c) provides:

An amendment changing the party against whom a claim is asserted relates back if the foregoing provision [regarding relations back of claims] is satisfied and within the period provided by law for commencing the action against the party to be brought in by amendment that party (1) has received such notice of the institution of the action that the party will not be prejudiced in maintaining his defense on the merits, and (2) knew or should have known that, but for a mistake concerning the identity of the proper party, the action would have been brought against the party.

Defendants argue that the new defendants did not receive notice of the action during the three-year limitation period as required by Rule 15. Although "the requisite knowledge of an action can be imputed to a new defendant through his attorney who also represented the party or parties originally sued," *Kirk v. Cronvich*, 629 F.2d 404, 408 (5th Cir.1980), Rule 15(c) requires that the original defendants receive notice of the original claims within the applicable limitations period. *See Schiavone v. Fortune*, 477 U.S. 21, 106 S.Ct. 2379, 91 L.Ed.2d 18 (1986). Giving Lopez the benefit of the doubt, the limitations period applicable to this action expired on or about December 3, 1985. Although the original complaint was filed within the limitations period, the original defendants were not served with the summons and complaint, and thus did not receive notice of the action, until January, 1986—after the limitations period expired.

Lopez contends that the court should apply NYCPLR § 203(b)(5) to determine when the limitations period expired. Unlike a federal action which is commenced with the filing of a complaint, an action in a New York State court is not commenced until a summons is served upon the defendant. Under § 203(b)(5), the applicable limitations period is tolled for sixty days if the plaintiff files his complaint with the county clerk within the applicable limitations period. If the plaintiff serves a summons on the defendant within that sixty day period, his action is timely. Relying on diversity cases, *e.g.*, *Somas v. Great American Ins. Co.*, 501 F.Supp. 96 (S.D.N.Y.), Lopez contends that the filing of the complaint with the clerk's office should be deemed equivalent to filing with the county clerk for purposes of CPLR § 203(b)(5).

■ Although federal courts have adopted certain state tolling provisions in § 1983 actions where federal law was deficient, *see, e.g.*, *Board of Regents v. Tomanio*, 446 U.S. 478, 100 S.Ct. 1790, 64 L.Ed.2d 440 (1980), Fed.R.Civ.Proc. 3, and not state law, determines when a federal civil rights action commences. *See Cohen v. Board of Ed.*, 536 F.Supp. 486 (S.D.N.Y. 1982).[4] Thus, the filing of the complaint did not toll the statute of limitations with respect to the new defendants and the claims against them are time-barred.

Defendants contend that the claims against the original defendant Kingston are barred by *res judicata* because such claims have the same factual predicate raised in *Lopez 1* and because defendant Kingston has an identity of interest with the City, a defendant in *Lopez 1*, for purposes of *res judicata*. Although defendants are correct that in certain cases "[m]unicipal corporations and their officials are treated as being in privity for purposes of suits by or against either one," *Patton v. Dumpson*, 498 F.Supp. 933, 943 (S.D.N.Y.1980), this is not such a case.

In *Sunshine Coal Co. v. Adkins*, 310 U.S. 381, 403, 60 S.Ct. 907, 917, 84 L.Ed. 1263 (1940), the Supreme Court held that "there is privity between officers of the same government so that a judgment in a

4. It appears that New York does not recognize the doctrine of relations back when a plaintiff seeks to add a new party after the limitations period has expired. *See Duffy v. Horton*, 66 N.Y.2d 473, 497 N.Y.S.2d 890, 488 N.E.2d 820 (1985). Furthermore, NYCPLR § 203(b)(5) tolls the limitations period only for a *defendant or a co-defendant united in interest with the* *defendant* for whom a summons has been served pursuant to its provisions. Lopez cites no authority interpreting § 203(b)(5) as extending the limitations period for claims against all potential defendants. Thus, even if the court were to accept Lopez's argument on the applicable tolling provision, his claims against the new defendants would still be time-barred.

suit between a party and a representative of the United States is *res judicata* in a relitigation of *the same issues* between that party and another officer of the government" (emphasis added). In the same opinion, the Court distinguished cases where "a judgment in a suit against a collector for unlawful exaction is not a bar to a subsequent suit by or against the Commissioner or the United States ... since the suit against the collector is 'personal and its incidents, such as the nature of the defenses open and the allowance of interest are different.'" *Id.* at 403, 60 S.Ct. at 917 (quoting *Sage v. United States,* 250 U.S. 33, 39 S.Ct. 415, 63 L.Ed.2d 828 (1919)). Simply put, the cases relied on by the defendants presume an identity of issues between separate actions against government entities and their officials. Defendants' own memoranda of law, however, demonstrate that the claims against the city and the claims against Kingston do not involve the same issues.

In an action against a municipality under § 1983, the plaintiff must plead and prove "that the [municipality] ... implemented an unlawful practice or policy which subjected plaintiff to the alleged deprivation of his rights." (def. mem. at 9). In contrast, a § 1983 action against an individual official can rest upon a single deprivation of constitutional rights. *See Williams v. Vincent,* 508 F.2d 541 (2d Cir.1974). Because the issues in a § 1983 claim against a municipality and a § 1983 claim against an individual are not the same, individual defendants and municipalities are not necessarily in privity although the claims might involve common facts.

 The order of dismissal in *Lopez 1* confirms that Kingston and the City were not in privity for purposes of Lopez's § 1983 claims. After dismissing the complaint for failing to allege that the City maintained an illegal policy, the court observed that "the parties against whom [Lopez] has instituted this action are not proper parties." It is therefore apparent that the Court was implicitly stating that Kingston and the other individual defendants were separate parties. Indeed, if defend-

ants' privity argument is applicable to § 1983 actions, then a plaintiff could sue individual public officials for a single constitutional violation and then recover the judgment against the municipality since it would be bound by the judgment against the officials. This is certainly not the case. Therefore, the court finds that Lopez's claims against Kingston are not barred by *res judicata.*

For the reasons stated above, the defendants' motion to dismiss the claims against defendants Ward, Bantum, Keith, Jameson, Berman, Pankowitz, Wilkes, and Montefiore Hospital and Medical Center is granted, and defendants' motion to dismiss the claims against defendants Kingston and the City of New York is denied.

SO ORDERED.