**Juan CANDELARIA, Plaintiff,**

v.

**Thomas A. COUGHLIN, III, et al., Defendants.**

**No. 93 Civ. 3212 (RWS).**

United States District Court, S.D. New York.

June 10, 1994.

Juan Candelaria, pro se.

G. Oliver Koppell, Atty. Gen. of the State of New York by Mark G. Peters, Asst. Atty. Gen. (of counsel), New York City, for moving defendant.

## OPINION

SWEET, District Judge.

Defendants Thomas A. Coughlin, III ("Coughlin"), Charles Scully ("Scully"), Robert Greifinger ("Greifinger"), Saundra Johnson ("Johnson"), Christopher Artuz ("Artuz"), (collectively, the "Moving Defendants"), move to reargue the Opinion of this Court, *Candelaria v. Coughlin*, 93 Civ. 3212, 1994 WL 119146, 1994 U.S.Dist. LEXIS 3999 (S.D.N.Y. Apr. 4, 1994) (the "Opinion"), which dismissed the bulk of *pro se* Plaintiff Juan Candelaria's ("Candelaria") claims al-

leging various constitutional and civil rights violations. Candelaria has also moved to reargue certain aspects of the Opinion. The motions were considered fully submitted on April 27, 1994.

For the reasons set forth below, the Moving Defendants' motion is denied and Candelaria's motion is granted in part.

### The Parties

Candelaria is a paraplegic inmate under the care and custody of the New York State Department of Correctional Services. He is currently incarcerated in Clinton Correctional Facility ("Clinton"), Dannemora, New York.

Defendant Coughlin is the Commissioner of the New York State Department of Corrections. Defendant Greifinger is the Deputy Commissioner and Chief Medical Officer of the Department of Correctional Services.

Defendant Scully is the former Superintendent of Green Haven Correctional Facility ("Green Haven"). Defendant Artuz is the current Superintendent of Green Haven. Defendant Johnson is the Regional Health Services Administrator for Green Haven.

Defendants Jeanty and Lemmerman are respectively the Facility Health Services Director and Nurse Administrator at Green Haven. Defendant Budd is the Acting Deputy Superintendent for Security Service at Green Haven. Defendant Oldham is the First Deputy Superintendent for Security Service at Green Haven. Defendant Danash, Mondello, Kelsh, Connally, and John Doe are all alleged to be Corrections Officers at Green Haven. Jane Doe is alleged to be a Corrections Officer at Albany Medical Center. The Defendants listed in this paragraph shall be referred to as the "Non–Moving Defendants."

### Prior Proceedings and Facts

In November of 1990 and April of 1991, Candelaria filed two § 1983 civil rights actions against Coughlin, Scully and several Green Haven correctional officers which were consolidated before the Honorable Judge Leonard B. Sand. In that action, Candelaria alleged, among other claims, that those defendants had violated his constitutional rights by denying him proper medical care, in that among other acts, the defendants did not provide Candelaria an adequate wheel chair, a liquid diet, heating pad and other medical supplies. Candelaria's request for injunctive relief was denied, and a portion of his suit was dismissed. *Candelaria v. Coughlin,* 787 F.Supp. 368 (S.D.N.Y.), *aff'd,* 979 F.2d 845 (2d Cir.1992). Certain of those medical claims remain pending.

Candelaria has filed this second law suit claiming that various Green Haven medical personnel continued to refuse to provide him with proper medical treatment and subsequently started to "intentionally retaliate[ ]" against him because he filed the initial lawsuit. (Am.Compl. ¶ 1.) Specifically, Candelaria claims that Dr. Jeanty discontinued his liquid diet for two days between April 29 and May 1, 1991. In addition, Dr. Jeanty is alleged, over Candelaria's objections, to have replaced Candelaria's Tylenol #3 prescription with Anacin and denied Candelaria a medically necessary heating pad. Candelaria states in the Complaint that on May 24, 1991 he asked Dr. Jeanty if these denials were based upon his earlier civil rights case and that Dr. Jeanty responded: " 'That's part of my job, a lot of inmates take me to court and I have not any prejudice about that.' " (Am. Compl. ¶ 3.)

On May 29, 1991, Candelaria allegedly threatened Dr. Jeanty after he denied Candelaria's request for pain killers. (*See* Pl.'s Ex. 1.) As a result of this incident, Candelaria was issued a misbehavior report. A hearing was held before Lieutenant Connally whereupon the Plaintiff was sentenced to 30 days "keeplock." Candelaria alleges that the hearing violated his rights to due process, but does not elaborate upon any specific details as to this claim.

On October 11, 1991, Candelaria was sent to the Albany Medical Center in order to have a specialist evaluate his chronic tonsillitis. He alleges that his request for food was ignored by Officer Mondello and Officer Jane Doe. At some point during his trip to Albany Medical Center, Candelaria somehow fell out of his wheelchair onto the floor. He states that he was left on the floor in the holding pen and did not receive medical at-

tention for a number of hours. Candelaria asserts that Officer Mondello acted with deliberate indifference to his medical needs by failing to provide him with medical attention while he was lying on the floor. Eventually, Candelaria received medical attention at the Albany Medical Center later that day. (Am. Compl. ¶ 6.)

Candelaria states that Dr. Jeanty's subsequent refusal to give him the pain killer Tylenol # 3, has led to the development of a "permanent lump" in his neck. Candelaria also alleges that Dr. Jeanty once again discontinued his liquid diet, and, as a result, he has lost 50 pounds between August 1991 and January 1992. In the Complaint, Candelaria states that "I have no knowledge of the actual action [sic] basis for the denial of available and need [sic] liquid-diet, except that I strongly believe that the denial was based upon personal hostility and retaliation toward [sic] me for the filing of the original lawsuit. *Candelaria v. Coughlin,* et al, 91 Civ. 2978 (LBS)." (Am.Compl. ¶ 7.)

On December 19, 1991, Candelaria's cell caught on fire. Candelaria was originally served with a misbehavior report, allegedly at the instruction of Captain Budd, for starting the fire. However, upon a hearing, it was determined that someone other than Candelaria set the fire and the proceedings against him were dismissed on January 13, 1992. (Am.Compl. ¶ 9; Pl.'s Ex. 3.)

On January 15, 1992, Candelaria was transferred from Green Haven to Clinton. Although Candelaria states that the prison officials told him that his transfer was due to the fire in his cell, he nonetheless contends the transfer violates the Modified Final Judgment issued by this Court in *Milburn v. Coughlin,* 79 Civ. 5077 (S.D.N.Y. Aug. 1, 1991) which guides the transfer of medically needy inmates. In sum, Candelaria contends that his alleged denial of adequate medical care, and his subsequent transfer to Clinton, is in retaliation for his lawsuit.

This Complaint was originally filed as a proposed class action on March 29, 1993. On May 13, 1993, the Honorable Judge Charles L. Brieant issued an order granting the Plaintiff's request to proceed *in forma pau-*

*peris* and directing the Clerk of the Court to assign a docket number to the Complaint. Judge Brieant's Order indicated that as a matter of law *pro se* plaintiffs may not initiate class action suits, that only incidents which occurred at Green Haven were properly brought in the Southern District of New York, and that all incidents which allegedly occurred at Clinton, located in the Northern District of New York, must be brought there. Accordingly, Judge Brieant directed the Plaintiff to amend the complaint and the exhibits to delete all claims arising out of actions relating to Clinton and leave in references only to employees and allegations pertaining to Green Haven. The Order also directed the Plaintiff to submit an amended Complaint within 60 days as the original complaint was found to be "replete with defects." *Candelaria v. Coughlin,* 93 Civ. 3212, Order at 2 (May 13, 1993). On June 14, 1993, Candelaria filed his first Amended Complaint.

On June 17, 1993, Judge Brieant issued a second order denying Plaintiff's request for reconsideration of his determination that the case may not proceed as a class action.

On June 29, 1993, the case was reassigned from Judge Brieant to the Honorable Judge Pierre N. Leval.

On September 15, 1993, Judge Level memo endorsed Plaintiff's motion seeking service upon Defendant Scully. Also on that day, upon the affidavit application of the Assistant Attorney General, Judge Leval ordered that the time for "all defendants to answer or otherwise move with respect to the complaint is extended to October 18, 1993."

On October 20, 1993, Judge Leval memo endorsed Plaintiff's motion of October 7, 1993 which stated that the Non–Moving Defendants had not yet been served and requesting additional time to do so.

On November 16, 1993, the Moving Defendants filed this motion to dismiss and request for stay pending the determination of this motion. The Non–Moving Defendants have

not responded to the Complaint, and it is presumed that they have not been served.[1]

On November 26, 1993, Candelaria filed a his Second Amended Complaint.

On December 10, 1993, this case was reassigned to this Court. On December 12, 1993, this Court granted Plaintiff's request for additional time, until December 30, 1993, to answer the Moving Defendants' motion and the motion was deemed fully submitted as of that date.

On April 4, 1994, this Court issued the Opinion which granted the Moving Defendants' motion to dismiss Candelaria's § 1983 claims against Defendants Coughlin and Scully concerning their purported failure to supervise Candelaria's alleged improper disciplinary hearings at Green Haven and alleged retaliatory transfer to Clinton. See Opinion, 93 Civ. 3212, 1994 WL 119146, at *4–5, 1994 U.S.Dist. LEXIS 3999, at ** 10–14 (S.D.N.Y. Apr. 4, 1994). The Opinion also found Candelaria's transfer to Clinton did not violate his rights under § 1983 as he had not put forth a sufficient set of facts necessary to vitiate the official reason—the fire in his cell—for his transfer, id. at *5–6, 1994 U.S.Dist. LEXIS 3999 at ** 14–15, or a set of facts that could sustain his claim that his transfer violated the Modified Final Judgment set forth in Milburn v. Coughlin, 79 Civ. 5077 (S.D.N.Y. Aug. 1, 1991), id. 1994 WL 119146 at * 5–6, 1994 U.S.Dist. LEXIS 3999 at ** 15–17. The Court determined that Candelaria's Eighth Amendment claim concerning the Defendants' alleged deliberate indifference to his medical needs were viable as put forth in his Amended Complaint. Id. at * 6–7, 1994 U.S.Dist. LEXIS 3999 at ** 17–21. Finally, the Court dismissed Candelaria's claims against Defendants Johnson and Artuz for lack of specificity and found Candelaria barred from seeking monetary damages under the Eleventh Amendment. Id. at * 7–8, 1994 U.S.Dist. LEXIS 3999 at ** 21–22.

Both parties have filed for reargument of the Opinion pursuant to Local Rule 3(j).[2] The Moving Defendants request reargument of that portion of the Opinion which declined to dismiss Candelaria's Eighth Amendment Claim against Defendants Coughlin, Greifinger and Scully. Candelaria requests reargument of the claims set forth in his proposed Second Amended Complaint concerning the alleged on-going conspiracy against him and the Moving Defendants' purported failure to properly notify the Clinton facility of his medical needs. In addition, Candelaria seeks reargument of this Court's denial of monetary damages and dismissal of his due process and improper prison disciplinary hearings claims.

### Discussion

### I. Candelaria's Motion to Admit His Second Amended Complaint Is Granted in Part

■ Candelaria's Second Amended Complaint was filed on November 26, 1994, ten days after the Moving Defendants filed their motion to dismiss this action. In a letter received by this Court on December 14, 1993, the Moving Defendants requested that

---

1. According to the Moving Defendants brief: "Plaintiff has also named a number of other prison officials in his complaint. However, these officials have not yet been served with a copy of the summons and complaint. (Affirmation of Juan Candelaria, executed October 2, 1993, ¶ 4). This Court has granted plaintiff additional time to serve these defendants." (Mov.Defs.' Mot. to Dismiss at n. 1.)

2. Candelaria has also filed his motion pursuant to Rule 60(b), Fed.R.Civ.P., which gives a court discretion to relieve a party from a final judgment, order, or proceeding for one of the following reasons:

 (1) mistake, inadvertence, surprise, or excusable neglect; (2) newly discovered evidence which by due diligence could not have been discovered in time to move for a new trial under Rule 59(b); (3) fraud (whether heretofore denominated intrinsic or extrinsic), misrepresentation, or other misconduct of an adverse party; (4) the judgment is void; (5) the judgment has been satisfied, released, or discharged, or a prior judgment upon which it is based has been reversed or otherwise vacated, or it is no longer equitable that the judgment should have prospective application; or (6) any other reason justifying relief from the operation of the judgment....

 The Second Circuit has held that "[m]otions under rule 60(b) are addressed to the sound discretion of the district court and are generally granted only upon a showing of exceptional circumstances." Mendell v. Gollust, 909 F.2d 724, 731 (2d Cir.1990), aff'd, 501 U.S. 115, 111 S.Ct. 2173, 115 L.Ed.2d 109 (1991).

Candelaria's motion to amend his complaint be denied on the grounds that it was an attempt to circumvent Judge Brieant's order limiting this action to events which transpired at Green Haven Facility.[3] In addition, Candelaria alleges that his request for the Defendants to conduct a hearing as to whether his transfer would be in violation of the *Milburn* Agreement was denied.

Candelaria's Second Amended Complaint will be admitted, pursuant to the relaxed pleading rules afforded *pro se* litigants in this Circuit, *see, e.g., Bradley v. Coughlin,* 671 F.2d 686, 690 (2d Cir.1982), to the extent the claims within that Complaint encompass events that took place at Green Haven. Accordingly, all allegations in the Second Amended Complaint which concern an alleged on-going conspiracy at Clinton and events which transpired after Candelaria's transfer from Green Haven will not be considered by this Court.

## II. The Legal Standards of Local Rule 3(j)

 For simplicity's sake, these motions will be considered pursuant to Local Rule 3(j). The standards controlling a motion for reargument pursuant to Local Rule 3(j) and a motion to amend the judgment pursuant to Rule 59(e), Fed.R.Civ.P., are the same. *See Morser v. AT & T Info. Sys.,* 715 F.Supp. 516, 517 (S.D.N.Y.1989); *Lotze v. Hoke,* 654 F.Supp. 605, 607 (E.D.N.Y.1987).

Local Rule 3(j) provides in pertinent part: There shall be served with the notice of motion a memorandum setting forth concisely the matters or controlling decisions which counsel believes the court has overlooked. No oral argument shall be heard unless the court grants the motion and specially directs that the matter shall be reargued orally. No affidavits shall be filed by any party unless directed by the court.

Thus, to be entitled to reargument under Local Rule 3(j), the Plaintiff must demonstrate that the Court overlooked controlling

decisions or factual matters that were put before the Court on the underlying motion. *See Ameritrust Co. Nat'l Ass'n v. Dew,* 151 F.R.D. 237 (S.D.N.Y.1993); *Fulani v. Brady,* 149 F.R.D. 501, 503 (S.D.N.Y.1993); *East Coast Novelty Co. v. City of New York,* 141 F.R.D. 245, 245 (S.D.N.Y.1992); *B.N.E. Swedbank, S.A. v. Banker,* 791 F.Supp. 1002, 1008 (S.D.N.Y.1992); *Novak v. National Broadcasting Co.,* 760 F.Supp. 47, 48 (S.D.N.Y.1991); *Ashley Meadows Farm Inc. v. American Horse Shows Ass'n,* 624 F.Supp. 856, 857 (S.D.N.Y.1985).

■ Local Rule 3(j) is to be narrowly construed and strictly applied so as to avoid repetitive arguments on issues that have been considered fully by the court. *See Caleb & Co. v. E.I. Du Pont De Nemours & Co.,* 624 F.Supp. 747, 748 (S.D.N.Y.1985). In deciding a Local Rule 3(j) motion, the court must not allow a party use the motion to reargue as a substitute for appealing from a final judgment. *See Morser,* 715 F.Supp. at 517; *Korwek v. Hunt,* 649 F.Supp. 1547, 1548 (S.D.N.Y.1986). As such, a party in its motion for reargument "may not advance new facts, issues or arguments not previously presented to the court." *Litton Indus., Inc. v. Lehman Bros. Kuhn Loeb, Inc.,* No. 86 Civ. 6447, 1989 WL 162315, at * 3, 1989 U.S.Dist. LEXIS 9145, at * 10 (S.D.N.Y. Aug. 4, 1989).

## III. The Moving Defendants' Motion to Reargue is Denied

In this Circuit, prison officials have consistently been held responsible for the quality of medical care given to inmates pursuant to Eighth Amendment. *See, e.g., Hathaway v. Coughlin,* 841 F.2d 48, 49 (2d Cir.1988) ("To establish an unconstitutional denial of medical care, it is enough for the prisoner to show deliberate indifference to serious medical needs."); *Kaminsky v. Rosenblum,* 929 F.2d 922, 925–27 (2d Cir.1991) (disputed factual questions concerning quality of the plaintiff's medical care bars resolution of immunity defense—by Regional Health Services Adminis-

---

**3.** In his Second Amended Complaint, Candelaria alleges that the Defendants' "conspiratory [sic] conduct is on going." (Second Am. Compl. ¶ 23.) The Defendants contend that Candelaria's

on-going conspiracy claim merely realleges his original retaliatory treatment claims against in a newly pleaded 42 U.S.C. § 1985 claim. (Mov.Defs.' letter of Nov. 26, 1993.)

trator and Superintendent of Green Haven—on summary judgment).

*Ayers v. Coughlin*, 780 F.2d 205 (2d Cir. 1985) is not inapposite. In *Ayers*, a prisoner complained that a corrections officer [Officer Kerbin] schemed with another inmate to assault the Plaintiff. Noting that the "failure of custodial officers to employ reasonable measures to protect an inmate from violence by other prisoners" implicates the Eighth Amendment protection against cruel and unusual punishment, *id.* at 209, the Second Circuit declined to extend liability to Defendants Coughlin and Smith since the record before that Court did "not demonstrate the personal involvement of these correctional officers sufficient to support their liability for wrongful acts on the part" of Officer Kerbin. *Id.* at 210.

Candelaria's action is distinguishable from *Ayers* in that it implicates not the isolated act of an individual corrections officer, rather it concerns the medical care system generally provided to Candelaria at Green Haven. "[A] supervisory official may be personally liable if he or she has 'actual or constructive notice of unconstitutional practices and demonstrates "gross negligence" or "deliberate indifference" by failing to act.'" *Al–Jundi v. Estate of Rockefeller*, 885 F.2d 1060, 1066 (2d Cir.1989) (quoting *Meriwether v. Coughlin*, 879 F.2d 1037, 1048 (2d Cir.1989)). Here, Coughlin, Scully and Greifinger, as supervisory officials, have failed to demonstrate that have no personal or constructive knowledge of the specific medical conditions or generalized system of medical care at Green Haven of which Candelaria complains.[4] As Justice Blackmun recently noted:

> The Framers were familiar from their wartime experience of British prisons with the kind of cruel punishment administered by a warden with the mentality of a Captain Bligh. But they were also familiar with the cruelty that came from bureaucratic indifference to the conditions of confinement. The Framers understood that cruel and unusual punishment can be administered by the failure of those in charge to give heed to the impact of their actions on those within their care.

*Farmer v. Brennan*, — U.S. —, —, 114 S.Ct. 1970, 1988, 128 L.Ed.2d 811 (1994) (Blackmun, J., concurring) (quoting *Jordan v. Gardner*, 986 F.2d 1521, 1544 (9th Cir. 1993) (concurring opinion) (citations omitted)).

■ Accordingly, as no controlling issue of law has been overlooked, the Moving Defendants' motion to reargue the Opinion is denied.

## IV. *Plaintiff's Motion to Reargue is Granted in Part*

Candelaria requests reargument of the claims alleged in his Second Amended Complaint concerning the purported on-going conspiracy against him at the Clinton Facility. (*See* Pl.'s Mot. to Reargue n. 1.) Specifically, Candelaria alleges that he:

> states sufficient facts suffesting [sic] that the defendants had agree to place and keep him in the prison's special management facility and to deny him legal access to a toilet or washbasin, and that he was transferred in retaliation for the filing of previous lawsuit against the defendants.

(Second Am.Compl. at 26.) Read most liberally, Candelaria's § 1985 claims all stem from facts which have taken place at Clinton and therefore may not be considered by this Court pursuant to Judge Brieant's Order

---

**4.** As this is a motion to dismiss, the Court is required to presume that all the factual allegations concerning the Defendants' purported deliberate indifference as to Candelaria's medical needs are true. Indeed, the Moving Defendants have proffered no facts overlooked by this Court nor have they provided medical records or affidavits concerning the medical care received by Candelaria during his tenure at Green Haven supporting their claim for supervisory immunity, accordingly, this Court need not, and indeed cannot, delve into the question of the prison officials' subjective "intent" as required by con-

temporary Eighth Amendment jurisprudence. *See Farmer v. Brennan*, — U.S. —, —, 114 S.Ct. 1970, 1978–1979, 128 L.Ed.2d 811 (1994); *see also Wilson v. Seiter*, 501 U.S. 294, 299, 111 S.Ct. 2321, 2324–25, 115 L.Ed.2d 271 (1991) (holding a subjective "inquiry into a prison official's state of mind [is mandated] when it is claimed that the official has inflicted cruel and unusual punishment."). It is also persuasive to note that Candelaria alleges he placed the Defendants on notice of his medical claims by requesting a hearing as to whether his transfer would violate the *Milburn* Agreement.

limiting the scope of this action to events which took place at Green Haven. As stated in the Opinion, it is possible that Candelaria has a viable claim against the Clinton Facility under the Americans with Disabilities Act, codified at 42 U.S.C. § 12101 *et seq.*, however, such an assessment is beyond this Court's jurisdiction. *See* Opinion 1994 WL 119146 at * 8, 1994 U.S.Dist. 3999 at * 20 n. 2. In the absence of any overlooked question of law or fact, Candelaria's motion to reargue his § 1985 claims is precluded by the Judge Brieant's Order.

Candelaria additionally seeks reargument of this Court's denial of monetary damages and dismissal of his due process and improper prison disciplinary hearings claims. In his motion, Candelaria again has not set forth any new set of facts or citations of law which were not considered by the Court, and accordingly, reargument on these questions is denied.

■ Candelaria's motion to reargue is granted to the extent that he has set forth a claim in his Second Amended Complaint that the Moving Defendants failed to properly notify the Clinton facility of his medical needs, pursuant to the Modified Final Judgment issued by this Court in *Milburn v. Coughlin,* 79 Civ. 5077 (S.D.N.Y. Aug. 1, 1991) (the *"Milburn* Agreement") which guided the transfer of medically needy inmates from Green Haven. In the Opinion, the Court found that Candelaria "neither claims that the facility he was transferred to—Clinton—did not receive proper notification of his medical conditions; nor does he indicate that he was awaiting a specialist appointment or hospital admission or special care at Green Haven." Opinion at ** 16–17.

However, in his Second Amended Complaint, Candelaria appears to do just that. Candelaria states that the Defendants failed "to issue a protocol describing the specific

duties of the treating receiving physician and nursing staff and failed to describe[ ] my serious medical condition and the need for adequate handicap accessibled [sic] facility ..." (Second Am.Compl. ¶ 21; *see also id.* ¶ 25.) Candelaria also alleges that he was transferred while waiting for a specialist treatment for tonsillitis and bladder conditions, (Second Am.Compl. ¶ 22.), which, if true, possibly constitutes a violation of the relevant provisions of the *Milburn* agreement.

At present, reading all the additional factual assertions set forth in the Second Amended Complaint as true, as this Court must on a motion to dismiss, *see Cosmas v. Hassett,* 886 F.2d 8, 11 (2d Cir.1989), it is possible that Candelaria's transfer was in violation of the terms of the *Milburn* Agreement.[5] Accordingly, Candelaria's motion to reargue this question must be granted as he has now set forth material factual matters which were previously overlooked by this Court in rendering the Opinion. *See Violette v. Armonk Assocs., L.P.,* 823 F.Supp. 224, 226 (S.D.N.Y. 1993).

### Conclusion

For the reasons set forth above, the Moving Defendants' motion to reargue the Opinion is denied. Candelaria's motion to reargue the dismissal of his claims concerning the Defendants' alleged violation of the *Milburn* Agreement is granted and the Second Amended Complaint may be filed in accordance with the limitations set forth in this Opinion.

It is so ordered.

---

**5.** The Moving Defendants have not responded to the substance of Candelaria's factual allegations that his transfer violates the *Milburn* Agreement, instead, they merely argue that "while in certain specified instances a transfer out of Green Haven can be seen to violate the consent decree, plaintiff's complaint does not allege facts which would demonstrate the existence of any of these highly specific instances." Although the Moving Defen-

dants state that they have considered and briefed the allegations set forth in the Second Amended Complaint, (*see* Mov.Defs.' letter of April 21, 1994), their two paragraph argument concerning the alleged *Milburn* Agreement violation fails to address the factual allegations made by Candelaria. Instead, the Moving Defendants merely deny liability can be imposed under the Agreement. (*See* Mov.Defs.' Br. at 11–12.)